Judgment reversed.

---

**SIMMONS *against* The Commonwealth.**

*Philadelphia,
Saturday,
July 17.*

THE plaintiff in error was indicted at a Mayor's Court
for the city of *Philadelphia* in *March* 1812, for feloniously
stealing and carrying away twenty-five silver spoons and other
articles, the property of *E. I. Dupont;* and upon the trial the
jury found a special verdict which stated, " that the defendant
" did feloniously steal, take; and carry away all the goods and
" chattels mentioned in the indictment (except six shirts of
" the value of seven dollars) *within the state of Delaware,*
" *and that he brought the same into the city of Philadelphia,*
" and within the jurisdiction of this Court; but whether &c."

A person who
steals goods in
another state,
and brings them
with him into
this state, can-
not be indicted
here for the fe-
lony. He is to be
treated as a fu-
gitive from jus-
tice.

Upon this verdict, the Court being of opinion that the de-
fendant was guilty in manner and form as he stood indicted,

1813.

SIMMONS
v.
COMMON-
WEALTH.

adjudged him to restore the property stolen, or pay the value to the owner, and to undergo a servitude at hard labour for the space of three years; and upon this judgment a writ of error was brought in this Court.

The question was argued by

*Phillips* for the defendant in error, and the Attorney General (*Ingersoll*) for the Commonwealth.

TILGHMAN C. J. This is an indictment for larceny. The property was originally stolen in the state of *Delaware*, and afterwards brought by the thief into this city. The jury found a special verdict; and the question submitted to the Court is, whether under such circumstances, an indictment can be supported in the Mayor's Court. The point has never been expressly decided; but it is understood, that a practice has prevailed *sub silentio*, under which there have been convictions in several of the courts of the state. This practice was founded on the general principle, that possession in the thief amounts to a larceny in every county into which he carries the goods, because the *legal possession* still remains in the true owner, and therefore every moment's continuance of the felony, amounts to a *new caption* and *asportation*. There is considerable subtlety in this principle. It was probably adopted for the convenience of trying the felon in the county where he was taken with the goods in his possession. For it is scarcely reconcileable to plain common sense to say, that the continuance of the possession amounts to a *new* taking. It is in fact but one and the same felony, and so it is considered in law; for if the thief, after carrying the goods from the county in which they were stolen, to another county, and after being indicted and convicted in the latter, should be again indicted in the former, he may plead the conviction in bar, which could not be done if they were *different* felonies. I consider the principle which I have mentioned as bordering upon a fiction, and although it is so well established as not now to be called in question, yet there is no reason why we should give it greater extent than it has received in the *English* common law from whence we took it. Now it was never extended by that law to cases where the *original* taking was without the kingdom. This is expressly stated by Lord *Coke* in 3 *Inst.* 113, and 13 *Co.* 53, in proof of which he cites *Butler's case*

in the 28th year of *Elizabeth.* It was the opinion of the
Judges at that time, that no offence was punishable at com-
mon law, which was committed without the jurisdiction of
the common law, that is out of the kingdom. This ancient
doctrine has been adhered to in modern times, as appears in
2 *East's Cr. Law* 772, where the case of *The King* v. *Ander-
son* is cited, in which it was determined by *all the Judges* in
the year 1763, that no indictment lay in *England* for goods
stolen in *Scotland* and brought into *England.* This was found
inconvenient, and therefore, so far as respected goods stolen
in *Scotland,* a remedy was provided by *stat.* 13 *Geo.* 3. *ch.* 31.
But I have never heard it suggested that the *English* courts
assumed a criminal jurisdiction in case of goods stolen beyond
sea, and brought into *England.* It may be said to be incon-
venient not to exercise jurisdiction in cases of goods stolen in
one of the *United States,* and brought into another, and it ap-
pears to me that it will be inconvenient. But the legislature
may at their pleasure apply the remedy, as the *British* parlia-
ment did. I feel myself treading on tender ground, when *cri-
minal* jurisdiction is in question; and I confess that I had
rather see a hundred culprits escape, than extend such juris-
diction a hair's breadth beyond its constitutional limits. The
constitution of the *United States* provides for the case of an
offender flying from the state in which the offence is com-
mitted. Wherever he is found, he may be secured and sent to
that state for trial, on demand of the executive thereof. If we
should punish him, he may be punished *again* in the state to
which he may be sent; for certainly the courts of that state
are not bound to pay any regard to our proceedings. A con-
viction *here* is no bar to an indictment *there.* The different
states are altogether as independent of each other in point of
jurisdiction, as any two nations; and if murder committed in
one state, should be prosecuted in another to which the mur-
derer had fled, without the authority of an act of assembly,
we should at once be shocked at the proceeding. In the Su-
preme Court of *New York,* it has been decided that larcenies
committed out of the state, cannot be prosecuted within it,
although the goods are brought there. 2 *Johns.* 477, 479. In
the state of *Massachusetts* the contrary opinion has been held.
1 *Mass. Rep.* 116., 2 *Mass. Rep.* 14. It appears however that
the Judges of *Massachusetts* relied very much on a decision in
their own courts, by which they conceived themselves bound,

1813.

SIMMONS
*v.*
COMMON-
WEALTH.

and the case of *the King* v. *Anderson*, cited in 2 *East* from a manuscript report, does not seem to have been known, because it is mentioned by Judge *Sedgwick*, that the only case relied upon as directly in point, was *Butler's case*, 3 *Inst.* 113. If the point had ever been decided in this Court upon solemn argument, I should have been for letting it rest. But that not being the case, we must take it up as *res integra*, and I am of opinion that the Mayor's Court had no jurisdiction, and therefore the judgment should be reversed.

YEATES J. I was not present at the argument on the special verdict found upon this indictment, having been on that day confined to my chamber by indisposition; but I have been furnished with the notes of the cases cited, and of the arguments of counsel on both sides. The jury have found the prisoner guilty of larceny, in stealing twenty-five silver spoons of the value of 100 dollars, of the goods and chattels of Mr. *Du Pont de Nemours*, at *Wilmington* in the state of *Delaware*, and that he brought the stolen goods into the city of *Philadelphia*. The Mayor's Court have decided that the facts thus found constitute a larceny here, in legal contemplation, and have sentenced the prisoner to an imprisonment at hard labour for three years &c. The question is, whether the offence charged against the prisoner is supported by these facts, so as to justify a conviction in this city.

Larceny is defined in the old books to be *fraudulenta obtrectatio rei alienæ, invito domino*. There must be a felonious taking and carrying away, in order to constitute the crime. Offences are *local* in their nature, and must at common law be tried in the county where they were committed.

There can be no doubt under the *English* authorities, that where a person steals goods in the county of *B*, and afterwards carries them into the county of *C*, he may be indicted in the county of *C* for the felony in the county of *B*. The reason given is, that the possession still continuing in the true owner, every moment's continuance of the trespass is as much a wrong to him, and may come under the technical word *cepit*, as much as the first taking. 1 *Hawk. c.* 33. *s.* 9., 2 *Hawk. c.* 25. *s.* 38., 1 *H. H. P. C.* 507, 8. 536., 2 *H. H. P. C.* 163. But to this rule there is an exception, that where goods have been piratically taken on the high seas, and afterwards have been brought into some county in *England*, this

is no felony punishable at common law, because the original taking was not an offence whereof the common law had cognisance. 13 *Co.* 53, *Butler's Case*, 3 *Inst.* 113.

It is objected by the counsel of the plaintiff in error, that *Delaware*, where the offence was first perpetrated, being a sovereign independent state, forms likewise an exception to the rule; and that although a conviction and judgment in one county, may be pleaded in bar to an indictment for the same offence in another county in the same state, yet the same would not hold where the sovereignties were completely independent on each other. The case of *Rex* v. *Anderson and others* (in 1763,) 2 *East's Pl. Cro.* 772, was contended to be similar in principle to the present. Where the original taking was in *Scotland*, it was adjudged that the felon could not be indicted in the county of *Cumberland*, where he was taken with the stolen goods. To remedy this defect in the law, the provisions in the fourth and fifth sections of the *stat.* of 13 *Geo.* 3. *c.* 31, were enacted. Reliance also has been placed on two decisions in the Supreme Court of *New York* in *November* 1807; *The People* v. *Gardner*, 2 *Johns.* 477; where a person stole a horse in the state of *Vermont*, and fled into the state of *New York*, where he was apprehended with the horse in his possession: it was determined that the prisoner could not be tried in *New York* for the felony. The Court held, that where the original taking was out of the jurisdiction of the state, the offence did not continue and accompany the possession of the thing stolen, as it does in the case where a thing is stolen in one county, and the thief was found with the property in another county. The prisoner could be considered only as a *fugitive* from justice from the state of *Vermont*. On the authority of this case one *Schenck*, who was indicted in the city of *New York* for stealing a gun, and the jury found a special verdict that the gun was stolen in the state of *New Jersey*, and brought by the prisoner into *New York* where it was found in his possession, the Court said that the prisoner was entitled to his discharge; but they ordered him to be detained in prison three weeks, and notice thereof to be given to the executive of *New Jersey*, and if the prisoner should not be demanded within that time, that he should be discharged. *Ibid.* 479.

The attorney general has insisted, that no solid distinction can be made between this case, and that wherein goods have

been stolen in one county and carried into another county. In either instance the possession of the goods though stolen and carried away, in legal contemplation remained in the real owner. It would be highly inexpedient that such offences should go unpunished; and it is absurd to suppose that a criminal in one state, passing its boundaries with the stolen articles in his hands, should escape with impunity. The invariable practice has been to try offences of this nature in this state, and the reason operates much more strongly since the adoption of the constitution of the *United States*. We are now become a federative republic. Two cases in the Supreme Judicial Court of *Massachusetts* have settled the law in that commonwealth in the manner it is now contended for on the part of the prosecution. *Respub.* v. *Thomas Cullens*, 1 *Mass. Term Rep.* 116, and *Respub.* v. *Thomas Andrews*, in *March* term 1806. The last was for receiving knowingly, goods stolen in *New Hampshire*, which were brought into *Massachusetts*, was fully argued by able counsel, and received the unanimous decision of all the judges, who delivered their opinions *seriatim*. The doubts respecting the law, anterior to the *British* statute of 13 *Geo.* 3. *c.* 31, as expressed in its preamble, were adverted to and remarked upon; and the Court thought that upon principle, independently of the cases decided in *Massachusetts*, the common law doctrine respecting counties might well be extended by analogy to the case of states, united as these are under one general government. The questions in the *New York* cases, cited for the plaintiff in error, appear to have been submitted to the Court and decided without argument.

I have bestowed on this subject every attention in my power, and will at once say, that the chief difficulty which I had to combat, was the effacing of impressions formed in my mind from the practice alluded to by the attorney general in his argument. But I cannot agree with him, that the principle which he has contended for, is fortified by the present constitution of the *United States*. The provisions of that instrument exclude the idea of the jurisdiction insisted on, and supersede the necessity of exercising it, least criminals in other states should escape with impunity. We find in the second section of the fourth article of the federal compact between the several states, that a person charged in any state " with " treason, felony or other crime, who shall flee from justice

"and be found in another state, shall on demand of the exe-
"cutive authority of the state from which he fled, be deliver-
"ed up, to be removed to the state having jurisdiction of the
"crime." When the law is settled and ascertained, political
expedience can have no influence on our judgments. We are
bound to pronounce the law as we find it written. In crimi-
nal cases in particular, the party charged should suffer no
other or greater punishment than the law imperiously enjoins.
I cannot possibly suppose, that where it is said in some of the
books, that the asportation of stolen goods into a different
county, satisfies the word *cepit*, by amounting to a new taking,
any thing more is meant than it being a continuance of the
first unlawful act, it is punishable in either county; not that
new and distinct offences arise in every county into which
the goods are carried. Were it otherwise, the original unlaw-
ful act might be punished as often as the number of counties
into which the criminal removed the goods; which would be
a plain violation of the great principle of natural law and po-
litical justice, that a man should not be punished twice for
the same offence. Upon this ground it was held, where a
piracy had been committed at sea, and the goods piratically
taken brought into *England*, the offence was not punishable
in a court of common law; if so prosecuted, the admiralty,
having jurisdiction of the original offence on the high seas,
might also proceed against the parties charged, who would
thus be subjected to a double penalty for the same crime.
13 *Co.* 53., 3 *Inst.* 113.

The distinction between the principal case and stolen goods
carried from one county into another in the *same* state or
kingdom, appears to me sufficiently obvious. In the latter in-
stance, general laws pervade the whole government, and pre-
scribe penalties on distinct offences. There *autre fois* convict
in one county, may be pleaded in bar to another prosecution
for the same offence in another county. But not so as be-
tween distinct and independent states, governed by different
laws. Our laws have no influence in the sister state of *Dela-
ware*, and so *vice versa*. A conviction here of an offence
against the peace and dignity of this commonwealth, cannot
be pleaded in bar to an indictment in *Delaware* for the same
offence laid against the peace and dignity of that state. Be-
sides, the penal codes of the several states greatly vary. We

1813.

SIMMONS
*v.*
COMMON-
WEALTH.

must presume that the punishments annexed to crimes in *Delaware*, are properly calculated to promote the peace and good order of society in that state. If the penalty prescribed to a larceny is more severe than that in *Pennsylvania* for the like offence, then it is clear, that the defendant does not receive an adequate punishment upon his conviction here of the crime committed in *Delaware;* but if on the other hand, the punishment here is the most severe, it is also clear that upon such conviction, he would be subjected here to a greater penalty than the laws of the country where the offence was perpetrated, in such case inflicted. The crime must be viewed retrospectively.

*Scotland*, for the purposes of the present argument, stood in the same political relation towards *England* in 1763, as *Delaware* now stands toward *Pennsylvania.* They were different kingdoms, governed by distinct laws, but were united under one common head for national defence, and in support of their general interests. The case of *Rex* v. *Anderson et al.* fully established the law, that antecedent to the *stat.* of 13 *Geo.* 3. *c.* 31, where a felony was committed in *Scotland*, and the stolen articles were brought by the felon into an *English* county, he could not be tried in such county. It of course settled the principle contended for by the counsel of the plaintiff in error, respecting goods stolen in one county and carried into another, that it relates merely to the jurisdiction of different courts acting under the same authority, and governed by the same rules. The reasons of the judges are not detailed in the report of the case in 2 *East's Cro. Law* 772, but most probably they are of the nature I have already mentioned. It appears that the case was heard first at *Carlisle* Summer Assises 1763, before *Gould* Justice, and afterwards before all the judges of *England* in *November* following.

The *stat.* of 13 *Geo.* 3. *c.* 31, was referred to in *Respublica* v. *Andrews*, but this case was most probably overlooked. It is impossible to suppose that it was cited, when we advert to the expressions of *Parker* and *Sedgwick* Justices. The latter in 2 *Mass. T. R.* 20, says, " all that can be inferred from the " *stat.* of 13 *Geo.* 3. *c.* 31, is that there were doubts or differ- " ent opinions on the question. If there had been a decision " against the jurisdiction, it would not have been said that " doubts existed, but that the law needed alteration."

The principle upon which the case of *Anderson et al.* was

decided, most strongly influences my mind in this instance. I cannot distinguish between them. If evils or inconveniences result from the doctrine I have laid down, the legislature alone can furnish an adequate remedy. My opinion is, that the judgment of the Mayor's Court be reversed. At the same time I much approve of what was done in *New York* in the case of *Schenck;* that the prisoner should be detained in gaol a reasonable time, and notice thereof be given to the executive of *Delaware*, and if he should not be demanded within that period, that he should then be discharged.

BRACKENRIDGE J. It is laid down simply and correctly, 2 *East's Crown Law* 771, " That the possession of goods stolen by the thief, is a larceny in every county into which he carries the goods, because the *legal* possession still remaining in the true owner, every moment's continuance of the trespass and felony, amounts to a new caption and asportation." On which I observe, that it is not because it is a continuance of the trespass committed in another county, but because it constitutes of itself an original and independent trespass. The question of actual possession originally in the owner, comes in only by way of evidence of property, and puts it upon the accused to shew how he came by the goods. It is the having the goods which I prove mine, and the having them *animo furandi*, a principal badge of which is concealment, that grounds a charge of felony, and subjects to the jurisdiction of the county in which the thief is found to have had the goods. It is on this principle alone of a new and independent trespass, that the jurisdiction of another county into which the goods are carried can be supported. For though evidence is admitted of actual possession in another county, yet it must be of a larceny in the proper county where the prosecution is, that a conviction can take place. But will evidence be admitted of actual possession in a foreign country, in order to support the constructive or legal possession necessary to constitute the trespass and felony in that to which the goods may be carried? I am not able to say why it should not. In that case a foreigner whose property has been taken beyond sea, and finding it in the hands of an *English* thief, might prosecute an convict. I can see no rule of general convenience or public policy why he should not. But we hear nothing in the *English* books of persons convicted for clandestinely taking

1813.

SIMMONS
*v.*
COMMON-
WEALTH.

goods in other countries, and stealing them by carrying them into *England.* It may be that the *English* Courts have not carried out the principle so far as to admit such evidence, had it been offered in any case. But there would seem no good reason why it should not be carried out in our country towards sister states, not that such a case strengthens the principle, but justifies the application. The being under one general government does not strengthen the principle, for that general government has no common law in this case, nor draws to it the common law of a state in this particular; but it is a reason of expediency and common utility, that the principle should be carried out in the application of it in the case of stolen goods brought by the thief from one state into another. Each neighbouring state would otherwise become a receptacle of stolen goods brought into it. Suppose an act of assembly to pass, that, in the case of stolen goods brought into this state from another, the thief might be prosecuted as for a larceny committed here. On what principle would this be, but that he might be considered as committing a larceny in this state, by that deprivation of possession which the true owner had sustained. I speak of the actual possession, and by that touch and handling of the goods, the *contrectatio rei alienœ animo furandi*, as *Bracton* expresses it. The exercising an act of ownerhip over such goods, with evidence of concealment and intention to steal, would make it a larceny within the state as to goods brought into the state, the legal or constructive possession still remaining in the original owner, and the law protecting that right. For " in the case of a personal chattel, the possession in law follows the right of property." 2 *East* 573. The moment that the true owner comes into the state, following the goods stolen, his right of possession attaches within the commonwealth, and the law will protect such property. It will punish the trespasser. It will give him an action of trover and conversion, where it is a trespass and bare keeping from him. Why not support a prosecution for a felony, where the *contrectatio animo furandi* exists? It is no argument against this, that goods obtained by theft at sea, and afterwards carried into some county, are not the subject of the common law jurisdiction, for this is an exception to the general rule. 2 *East* 772. It is because the Admiralty jurisdiction draws it *ad aliud examen.* A distinct tribunal is constituted for such offences. It is the same in this country. But for goods felo·

niously taken and brought from one state into another, there
is no such tribunal. Nor can it be necessary that the goods
be feloniously taken in the other state; for if they be obtained
by a trespass and brought into the state, and there be a con-
cealment here *animo furandi*, the law, if we are correct, would
make it a felony and prosecute it as such. I admit that an
implication arises from the absence of cases, or the silence of
reporters, that in *England* the common law did not protect
the legal or constructive possession, where the actual posses-
sion had not existed under the protection of that law. And
the exception would seem to be recognised by the law as it
respected *Scotland* before the union, and even after the union
doubts would seem to have been entertained. The same ex-
ception prevailed till lately, where the original taking was in
*Scotland.* 2 *East's Crown Law* 772. " It was ruled that a
felon in such case could not be indicted in *Cumberland,* where
he was taken with the goods." But I recur to the principle,
and lay aside the exception where there is no good reason
for it. It is not what has been done, but what can be done
consistent with principle, that I look to.

There is no implication contrary to this from the provision
of the constitution of the *United States, art.* 4. *sec.* 2. " that
a person charged in any state with treason, felony or other
crime, who shall flee from justice, and be found in another
state, shall on demand of the executive authority of the state
from which he fled, be delivered up to be removed to the
state having jurisdiction of the crime." Because even in this
case the owner of the stolen goods ought still to have *his
election* to have the thief back, or to prosecute him here, if
having taken the goods with him, and continued the felony,
or as I would say, committed the felony *de novo* within our
jurisdiction, he has put it in the power of the owner so to do.

On the argument of this case, there has been a reference to
the understanding of the law from the usage on this subject.
But I do not recollect that instances were produced of a pro-
secution for goods stolen in a neighbouring state, and brought
here. Nevertheless it is so consonant with principle and ge-
neral convenience, what is more, with the safety of the com-
munity in keeping thieves and stolen goods out of the state,
that I will not hesitate to sanction the doctrine, that a thief
bringing his stolen goods here, may be prosecuted as commit-
ting a theft here, and guilty of an offence against the peace

and dignity of this commonwealth. If the owner of goods taken in another state, and coming here, could not prosecute for a felony, neither could he maintain trespass, for that supposes a possession. He must allege a finding by the thief, and bring his action after demand made. If the thief is taken back to the state where he took the goods, and it is even made a part of his sentence on conviction, that he shall restore the goods, yet he has not the goods to restore, for they are in the state to which he carried them, and there he must be considered as having a right to detain them, so that they could not be brought forward at the trial to establish the identity and prove the theft. For though the executive of another state would be authorised to demand the thief, he could have no authority by the clause of the constitution to add *a duces tecum* of the goods stolen.

The principal thing that I find in the way of my doctrine from the *English* books, is the reason given, that " where one " stealeth goods in one county and brings them into another, " there he may be indicted of felony in any of the counties, " because the original act was felony, *whereof the common* " *law taketh knowledge.*" 13 *Coke* 53. But this is applying the reason of another case to the present one, *viz.* that " larceny " of goods at sea brought into a county," could not be tried there, because the jurisdiction of the Admiralty Court had attached by the original taking, and the cognisance of any after act could not be taken by the common law. But in no other case except that of larceny, can there be a question about the jurisdiction of a county, where the offence was committed, though under the same common law, and the punishment the same. " All crimes are local, and must be " tried *where* committed." In the case of robbery, there can be no relation to the act begun, to give that county jurisdiction. The locality must be where the crime was consummated. This overthrows all notion of the reason being because the offence was under the same common law. I refer to *Holt* Chief Justice, 11 *Mod.* 12. One county is as distinct from another, as one country from another, in respect of the right of jurisdiction. Personal actions follow the person, and there is a fiction of the contract being in the county where the person is; but trespass *quare clausum fregit* must be in the county where the trespass was committed. And there is no fiction in a criminal case so as to give jurisdiction. Upon

what principle then but that of considering the having goods in one county and exercising, so to speak, the stealth over them, can give that county jurisdiction? By the ancient law, " all offences were said to be done against the peace of the " county; *contra pacem vice comitis.*" 1 *Black.* 117. And though *Alfred*, to keep within the bounds of the universal or common law, gave the control to the king's own courts, in consequence of which offences were laid to be *contra pacem domini regis*, yet it still remained a principle, " that the trial of all " causes civil and criminal must be in the very district where " the cause of complaint arose." 4 *Black.* 411. Fiction in civil cases, as has been said, has dispensed with this as to actions purely personal, but in criminal *never*.

I therefore recur to the position which I think I have established, that it is not the carrying into another county the goods stolen, but the being considered as stealing in the new county the goods carried, that gives jurisdiction. What difference does it make where it is a new *county* into which they are carried? Supposing it not to have been within the policy of the Courts of *England* to extend this principle to goods taken in another country, say *Scotland, Ireland* or even *France*, and the larceny continued under the jurisdiction of the common law, yet it would be a matter of great inconvenience to restrict the cognisance in such manner between one of these states and another separated by no sea, but a narrow river, or ideal boundary, so easily passed or repassed in the asportation from one to another. And I say that no act of the legislature would do more than in affirmance of a principle, and as in the *Scotch* case " to remove doubts." For the common law of *Scotland* is not the common law of *England*, nor the mode of trial or punishment of crimes the same. The being therefore under the same common law, could have made no part of the reason of one county attaching the jurisdiction of a larceny, because a larceny of the same goods had been first committed in another county. An act of assembly is out of the question. For it could not provide that an act should be stealing where it was not, which would be the case, unless carrying stolen goods into the state was stealing within the state. As to an act providing that the bringing stolen goods into the state should be punishable, it would be a novel kind of misdemeanor, and of which we hear nothing in the intercourse of *England*, with *Ireland*, or with other

SIMMONS
v.
COMMON-
WEALTH.

countries. It would involve all the necessity of establishing the prior stealing, which would draw with it what was stealing in other countries. In that case the common or statute law of that country must come into view. No law of this state however framed could be made to reach in the shape of a prosecution for a felony, the bringing goods into the state. It would be made a misdemeanor only. I say no law could make it felony but in affirmance of the principle which I have laid down, that the *concealing* stolen goods within the commonwealth is a *stealing*, and against its peace and dignity. I incline therefore to support the prosecution.

Judgment reversed.

The Court at the same time directed the prothonotary to communicate the case of the prisoner to the executive of *Delaware;* and made an order for his discharge in three weeks, unless in the mean time a demand should be made agreeably to the constitution of the *United States.*