## THE STATE *against* ELLIS.

*The stealing of a horse in another state, and bringing him into this state, constitutes the crime of horse-stealing here.*

*October 28.*

THIS was an information for horse-stealing. There were three counts, in each of which the horse in question was averred to be the property of *Nathaniel Arnold*, of *Coventry*, in the county of *Kent*, in the state of *Rhode-Island*; and in one, the taking was alleged to have been in *Plainfield*, in another, in *Windham*, and in the third, in *Mansfield*, in the county of *Windham*, in this state.

On the trial, at *Windham, September* term, 1819, before *Bristol*, J. the attorney for the state offered evidence to prove, and claimed that he had proved, that the defendant stole the horse described in the information, in the state of *Rhode-Isl-*

24

*Windham,*
*October,*
*1819.*

*The State*
*v.*
*Ellis.*

*and;* came with him into the several towns mentioned in the several counts; and passed through them to *Willington*, in *Tolland* county, where he sold him. The defendant contended, that this evidence did not support the information. But the judge instructed the jury, that if they should find these facts to be proved, they must find the defendant *guilty;* which they accordingly did. The defendant thereupon moved for a new trial, on the ground of a misdirection; and the motion was reserved.

*Goddard*, in support of the motion, contended, 1. That the defendant could be convicted and punished in that state only, in which the offence was committed.

2. That the offence charged in this information was not committed in this state, but in *Rhode-Island.*

In support of these propositions, he referred to *Butler's* case, 3 *Inst.* 113. 3 *Rep.* 53. *Rex* v. *Anderson* & al. 2 *East's C. L.* 772. 1 *Hawk. P. C. c.* 33. *s.* 9. *Const. U. S. art.* 4. *s.* 2. *Rex* v. *Kimberly*, 2 *Stra.* 848.

*W. Perkins* and *Judson*, contra, disclaiming the idea of prosecuting the defendant here for an offence against the laws of *Rhode-Island*, contended, that the removal of this horse, by the defendant, in *Windham*, being then and there the property of the original owner, and constructively in his possession, was a stealing of the horse in *Windham*, and consequently, an offence against the laws of this state. Evidence of the taking in *Rhode-Island*, was proper to evince the *animum furandi* in *Windham*. They insisted, that this point had been settled, by repeated decisions of the superior court; which had hitherto been invariably acquiesced in. The supreme court of *Massachusetts* had recognized the same doctrine. *McNal.* 589. *Com. Dig. tit.* Indictment, G. 2. 4 *Black. Com.* 305. 2 *Swift's Syst.* 381. *Rex* v. *Peas*, 1 *Root* 69. *Commonwealth* v. *Cullins*, 1 *Mass. Rep.* 116. *Commonwealth* v. *Andrews*, 2 *Mass. Rep.* 14.

HOSMER, Ch. J. The single question presented, is, whether the stealing of a horse in the state of *Rhode-Island*, and bringing him into the county of *Windham*, is larceny punishable in this state. On this subject I am incapable of entertaining a doubt. The decisions here have been uniform and

numerous ; and the transaction alluded to, has ever been considered a theft. 2 *Swift's Syst.* 381. The law, most probably, was originally settled on a supposed analogy to the stealing of goods in one county, and conveying them into another ; in which event, larceny is committed in both counties. Whether there exists this analogy or not, in my opinion, it is much too late to recur to first principles. The determinations in the state of *Massachusetts,* have been precisely similar to ours. *Commonwealth* v. *Cullins,* 1 *Mass. Rep.* 116. *Commonwealth* v. *Andrews,* 2 *Mass. Rep.* 14.

It has never been supposed, that the courts in *Connecticut* could take cognizance of a crime committed against the laws of a neighbouring state ; but the felonious taking and asportation of property from an adjoining sovereignty into this, has been considered as *a repetition of the crime ;* the continuance of the original trespass being *a renewed wrong,* and, coupled with the felonious intent, a larceny, equally with the first taking. *Hawk. P. C. lib.* 1. *c.* 33. *s.* 9. On this theory, the caption of property within a neighbouring jurisdiction *animo furandi,* is a violation of its laws amounting to larceny ; and the bringing of it into *Connecticut,* with the same intent, is a breach of our laws,—a crime committed against this sovereignty. Whether the common law lends its sanction to this principle, is a question not involved in the case. It is sufficient to say, if any doctrine can be established, by a long train of uninterrupted precedents, this is immoveably settled, and not to be shaken, unless by legislative interposition. Whether principles of justice, or of expediency, require a correction of the law, should the question arise before the legislature, must be an interesting inquiry. If a person offends against the laws of two states, whether it be by stealing distinct property, in each sovereignty, or by feloniously taking goods in one state, and continuing the possession of them in another, there exists no hardship in the infliction of as many punishments as there have been crimes committed. And it merits much deliberation before the law shall be so varied, as in the language of Judge *Sedgwicke,* " a depot of plunder might be here established, and gangs of desperate villains be employed in the neighbouring states for its support." 2 *Mass. Rep.* 22.

CHAPMAN, BRAINARD, and BRISTOL, Js. were of the same opinion.

*Windham,*
*October,*
*1819.*

~~~~~~~

The State
*v.*
Ellis.

PETERS, J.    By the common law, "larceny is the felonious taking and carrying away of the mere personal goods of another," (*a*) or, as our commentator (*b*) adds from *Bracton,* (*c*) "with an intent to steal." *Furtum est, contrectatio rei alienæ fraudulenta, cum animo furandi.* "If the thief once take possession of the thing, the crime is complete; and a removal, with intent to steal, is sufficient." (*d*) "This intent, however, must be when it cometh to his hands; for if he hath the possession once lawfully, though he hath *animum furandi* afterwards, and carry it away, it is no felony." (*e*) In whatever jurisdiction a crime is committed, the criminal is punishable, and no where else; for no independent government enforces the penal laws of others, or punishes crimes committed against them. (*f*)

The laws of these *United States* are as foreign to each other as those of any other sovereignties. They are proveable as facts, and not noticeable as laws. How, then, can we know what constitutes larceny in *Rhode-Island?* or enquire of criminal acts done in that state? For aught we know, *judicially*, theft is tolerated *there*, as we know *historically*, it was in ancient *Sparta*. But to prove the defendant guilty here, he must be first proved guilty there. As the original taking and carrying away, was in another state, we must enquire with what intent this was done: for if it was by bailment *bona fide*, or by finding, no subsequent conversion, although *animo furandi*, could make it felony. (*g*) Possession here, is *prima facie* evidence of property; and this cannot be rebutted, without enquiring into transactions beyond our reach.

But it is said, that, every amotion of stolen property, is a new theft. If so, one who steals and rides a horse, is liable to be tried and punished as often as the horse steps; and if not recovered or restored, on conviction, a subsequent user of the horse subjects the offender to the accumulated penalties of a second and third offence—to imprisonment for life, for a single felonious taking and carrying away; and by riding through several states, he becomes liable to the various penalties there inflicted, until he arrives at the gallows. "*Mors dicitur ultimum supplicium.*" (*h*) This, according to the notion of a late

(*a*) *Black. Com.* 229.   (*b*) 2 *Swift's Syst.* 334.   (*c*) *Lib.* 3. *fol.* 150.   (*d*) 2 *East's C. L.* 557.   *Simson's* case, *Kel.* 31.   (*e*) 3 *Inst.* 107.   (*f*) *Scoville v. Canfield*, 14 *Johns. Rep.* 339.   (*g*) 3 *Inst.* 107, 8.   (*h*) 3 *Inst.* 212.

learned Judge, may be good enough for thieves ; (*i*) but it is not " equal and exact justice to all men," and is repugnant to the humane maxim of common law, (*k*) adopted by the constitution of the *United States*, (*l*) and the laws of this state, (*m*) that "a man shall not be twice put in jeopardy, for one and the same offence."

It seems to be admitted, that this prosecution is not according to the course of the common law. But it is said to be " too late to recur to first principles." By the common law, all crimes were punishable in the country where committed ; and a thief, flying from a foreign country, was not to be punished, but seized and returned to the country where the crime was committed, even when subject to the same sovereign, but governed by different laws. (*n*)

In *Butler*'s case, (*o*) where goods were stolen on the high seas, and brought into *England*, it was holden, that the thief could not be punished by the courts of common law, because, the crime was committed within the jurisdiction of another court, and it would subject the criminal to be twice put in jeopardy for the same act. In *Rex* v. *Anderson* & al., (*p*) it was decided by *Gould*, J., and confirmed by all the judges of *England*, that a thief, who had stolen in *Scotland*, and brought the goods into *England*, could not be there punished. This was remedied by stat. 13 *Geo.* 3. *c.* 31. and the thief made liable where taken with the stolen property. And it was very early provided, by statute here, (*q*) that thieves should be punished in the county where the crime was committed, or where they were apprehended.

Much reliance is placed on the decisions of this state ; but one case (*r*) only has been cited. Whether this was an adoption of the *English* statute, or an extension of our own, on the principle of analogy, we are left to conjecture. If it was an adoption of the *English* statute, it was made without authority, and was done away by the revolution. If an extension of our statute, it was repugnant to the maxim, that penal laws are to be construed strictly, as well as to the common law ; and was certainly unnecessary then, as well as now ; for fugitives from justice in other governments, were then provided for by stat-

(*i*) See 2 *Mass. Rep.* 22.　(*k*) 4 *Rep.* 45.　(*l*) *Amend. Art.* 5.　(*m*) *Tit.* 46. *c.* 1. *s.* 10.　(*n*) *Rex* v. *Kimberly*, 2 *Stra.* 848.　(*o*) 3 *Inst.* 113.　13 *Rep.* 53.　(*p*) 2 *East's C. L.* 772.　(*q*) *Revision of* 1702, *p.* 11.　(*r*) *Rex* v. *Peas*, 1 *Root* 69.

ute, (s) and now by the constitution of the *United States.* (t) If the several states are independent sovereignties, they cannot be considered as sections or counties of the same government, without being consolidated ; and if the analogy of states to counties be correct, it remains to be shown, that a thief may be punished in every county, through which he passes with stolen goods.

It has always been considered as the right of *English* subjects, to be tried by a jury of the vicinage, *i. e.* the county, where a crime is committed, unless taken away by statute ; and the provision in the constitution of the *United States*, relative to fugitives from justice, is merely an adoption of the common law. " If," says *Chitty*, " a person having committed a felony in a foreign country, comes into *England*, he may be arrested, conveyed, and given up to the magistrates of the country, against the laws of which the offence was committed." (u) In *Mure* v. *Kaye*, 4 *Taun.* 34. 43. *Heath*, J. says, " wherever a crime has been committed, the criminal is punished according to the *lex loci* of the country against the laws of which, the crime was committed ; and by the comity of nations, the country in which the criminal has been found, has aided the police of the country, against which the crime was committed, in bringing the criminal to punishment." He adds, " and the same has always been the law of all civilized nations." The same doctrine has been repeatedly recognized, by the chancellor, and by the judges of the supreme court, of the state of *New-York*, (w) who are justly ranked among the most enlightened jurists of this, or any other nation.

I, therefore, advise a new trial.

New trial not to be granted.

(s) *Revision of* 1750, p. 106. (t) *Art.* 4. *sect.* 2. (u) 1 *Chitt. C. L.* 16. (w) See *Ex parte Washburn*, 4 *Johns. Chan.* 106. *The People* v. *Gardner*, 2 *Johns. Rep.* 477. *The People* v. *Schenck*, 2 *Johns. Rep.* 479.