## COMMONWEALTH *vs.* ANDREW UPRICHARD.

The bringing into this commonwealth, by the thief, of goods stolen in one of the British Provinces, is not larceny in this commonwealth.

SHAW, C. J.   The defendant, together with Thomas Carey, was indicted in the municipal court for larceny, in stealing a large number of sovereigns and other gold and silver coins, properly enumerated and described.   The indictment charges that the two defendants, at Boston, on the 27th of· July 1854, the gold pieces and other coins, the property of George D. Twinning, in his possession then and there being, feloniously did steal, take and carry away.

The evidence failing to prove a joint possession of the stolen property in this commonwealth, the prosecuting attorney submitted to a verdict in favor of Carey, and proceeded against Uprichard; and afterwards a new indictment was found by the same grand jury, so that each was tried as upon a separate indictment for the goods found in his separate possession.   See *Rex* v. *Barnett*, reported in 2 Russell on Crimes, (7th Amer. ed.) 117.

The defendant Uprichard was convicted upon the evidence and under the instructions of the court; and the judge, finding the case to involve important questions of law, with the consent

of the defendant, and conformably to the provision of law in that behalf, reported the same for the consideration of this court.

By the report it appears that Uprichard and Carey were soldiers in the service of the Queen of England, at Sidney, in the Province of Nova Scotia; that the coins alleged to be stolen were partly the property of George D. Twinning, a deputy commissary at the military station in Sidney, and partly the property of the queen, in the care and control of said commissary; that the property was taken from the military chest, without right, said chest being in the possession of said Twinning; that the defendants deserted about the same time, with certain of said coins in their possession, and were found in this state, each having a part of the stolen property in his possession.

Upon the evidence offered, the counsel for the defendants asked the court to rule that the indictment could not be supported by the evidence: 1st. Because the law in force at Sidney was not proved; 2d. Because said property, if stolen at all, was stolen at Sidney, out of the State of Massachusetts, and out of the United States; and the bringing of said stolen property into, and the possession of it in Boston, would not constitute the crime of larceny in this commonwealth, and would not support the allegation that the coins and other property were feloniously stolen in this county; and therefore the court had no jurisdiction of the offence. But the court overruled the motion, and Uprichard was convicted.

This is briefly stated; but we understand, and so it has been understood in the argument, that the court instructed the jury that if the property was stolen by the defendant at Sidney, in Nova Scotia, one of the colonies and possessions of the Queen of Great Britain, and the property, so stolen, and continuing in the possession of the defendant, was brought by him into this commonwealth, and into this county, the indictment charging him with stealing them, being in possession of the owner, in this county, was legally sustained, and that the defendant could be convicted and punished for this offence by our laws.

We do not perceive that it makes any difference whether the property, stolen in a foreign country, was the property of the

sovereign, or of a subject. Indeed, it seems that a part of it was of the one character, and a part of the other. Nor does it make any difference that the defendant deserted the military service at the same time that he plundered the property of his sovereign.

This case presents an extremely interesting and important question; and the precise question, we think, comes up now for the first time in this commonwealth. The main argument in support of the conviction is founded on the well known rule and practice of the common law, that all trials must be had in the county where the offence is committed; that when property has been proved to have been stolen in one county, and the thief is found, with the stolen property in his possession, in another county, he may be tried in either county. It proceeds on the legal assumption that when the property has been feloniously taken, every act of removal or change of possession by the thief may be regarded as a new taking and asportation; and as the right of possession, as well as the right of property, continues in the owner, every such act is a new violation of the owner's right of property and possession, and so it may be said, at each removal, to be taken from his possession. 2 Russell on Crimes, (7th Amer. ed.) 115, 116. But in principle these cases are not strictly analogous. If the offence is committed anywhere within the realm of England, in whatever county, the same law is violated, the same punishment is due, the rules of evidence and of law governing every step of the proceedings are the same, and it is a mere question where the trial shall be had. But the trial, wherever had, is exactly the same, and the results are the same. A conviction or acquittal in any one county is a bar to any indictment in every other; so that the question as to the place of trial is comparatively immaterial. But even in England, a crime, being an offence against the laws of England, committed on the high seas, and not within the body of any county, cannot be tried in any county, but only in the courts of admiralty jurisdiction; and a fortiori, an offence committed in a foreign country, by persons not there amenable to the laws of England, could not, upon principle, be tried and punished in England; and the rule, that when goods are feloniously taken and brought into a

county, it may be charged and tried as an offence in that county, did not anciently extend to goods stolen in any place not within the common law jurisdiction. 3 Inst. 113. 1 Hawk. *c.* 33, § 52. And a similar exception took place in regard to goods stolen in Scotland or Ireland, and brought into England, until altered by *Sts.* 13 Geo. 3, *c.* 31, § 4, and 7 & 8 Geo. 4, *c.* 29, § 76. *Rex* v. *Anderson*, 2 East P. C. 772. *Rex* v. *Prowes*, 1 Mood. C. C. 349. And the effect of these English statutes was, that where goods were stolen in one part of the United Kingdom, and carried into another by the thief, or received by one knowing them so to have been stolen, the thief or receiver might be indicted and tried in that part of the United Kingdom where the goods were found. This was within the principle, that, in whatever part of the same government the offence was first committed, the same law was violated, the same rule and measure of punishment attached, and with the same consequences, in whatever part of the territory of the same government the trial was had. But, even under the English statutes, one who steals goods in Jersey, and carries them into England, cannot be tried there for larceny, Jersey not being in the United Kingdom within the meaning of those statutes. *Rex* v. *Prowes*, 1 Mood. C. C. 349. See also *Regina* v. *Madge*, 9 Car. & P. 29.

Such being the rule of the English law, we are next to inquire how it stands in this state and in the other states of the Union. In some of the states it is held that, according to the English rule in respect to counties, the carrying of stolen goods by the thief into another state, from the one in which they were stolen, is a new caption and a new asportation in the state into which they are thus carried. In other states a different rule is held.

In Pennsylvania it has been held that such carrying of stolen goods by the thief into another state, and possession of them there, is not larceny in the latter. *Simmons* v. *Commonwealth,* 5 Binn. 617. So in North Carolina and Tennessee. *The State* v *Brown*, 1 Hayw. 100. *Simpson* v. *The State*, 4 Humph. 456. And in New York. *The People* v. *Gardner*, 2 Johns. 477. *The People* v. *Schenck*, 2 Johns. 479.

But a different rule has been adopted in Maryland, *Cummings*

v. *The State*, 1 Har. & Johns. 340; in Ohio, *Hamilton* v. *The State* 11 Ohio, 435; in Vermont, *The State* v. *Mockridge*, cited in 11 Verm. 654; and in Connecticut, *The State* v. *Ellis*, 3 Conn. 185.

The same rule, also, that such bringing in of stolen goods is larceny, has been adopted in this commonwealth, in two cases next to be cited.

It seems to have been considered, that although the several states are, in their administration of criminal law, regarded as sovereign and independent, yet, as they were originally English colonies, and acknowledged their subjection to the common law of England, and claimed its privileges, and all equally derived their principles of criminal jurisprudence mainly from that source, and as they had been, both before and since the Revolution, closely united for many purposes, there was an analogy, more or less strict, between the relations of these states to each other, and those of counties under the same government; and therefore that the same rule might be safely adopted.

The first was the case of *Commonwealth* v. *Cullins*, 1 Mass. 116. The goods were stolen in Rhode Island and brought into Massachusetts. The court instructed the jury, that stealing goods in one state and carrying them into another state was similar to stealing in one county and carrying them into another, and was larceny in both; and therefore, if the facts were proved, the jury would find the defendant guilty of stealing in Massachusetts. But this point was not argued.

In *Commonwealth* v. *Andrews*, 2 Mass. 14, the defendant was convicted of receiving stolen goods, which had been stolen in New Hampshire and brought into this commonwealth; and the court held that the stealing of them was larceny in this commonwealth, and rendered the defendant answerable for receiving the goods, knowing them to be stolen. And, in the same case, Dana, C. J. mentioned the case of Paul Lord, tried in York, in 1792, before the publication of reports, in which it was held that stealing goods in another state and bringing them into this were larceny in this. And that learned chief justice thought that many more cases had been determined on the same grounds. Some of the judges, however, in this case, were of opinion,

upon the facts stated, that there had been a second taking of the goods in this state, so as to make it actual stealing in Massachusetts.

It has then been argued that the same rule ought to apply to foreign governments as to the several states of the Union, because in their respective jurisdictions, and in the laws which regulate their internal police, these are as much foreign to each other as each state is to foreign governments. Perhaps, if it were a new question in this commonwealth, this argument might have some force in leading to another decision in regard to the several American states. But supposing it to be established by these authorities, as a rule of law in this commonwealth, that goods stolen in another state, and brought by the thief into this state, are to be regarded technically as goods stolen in this commonwealth, we think this forms no sufficient ground for carrying the rule further, and applying it to goods stolen in a foreign territory, under the jurisdiction of an independent government, between which and our own there is no other relation than that effected by the laws of nations. Laws to punish crimes are essentially local, and limited to the boundaries of the state prescribing them. Indeed, this case and the cases cited proceed on the ground that the goods were actually stolen in this state. The commission of the crime in Nova Scotia was not a violation of our law, and did not subject the offender to any punishment prescribed by our law. This indictment proceeds on that ground, and alleges the crime of larceny to have been committed in violation of the laws of this commonwealth, and within the body of this county. It is only by assuming that bringing stolen goods from a foreign country into this state makes the act larceny here, that this allegation can be sustained; but this involves the necessity of going to the law in force in Nova Scotia to ascertain whether the act done there was felonious, and consequently whether the goods were stolen ; so that it is by the combined operation of the force of both laws that it is made felony here. Were it any other offence than that of larceny, which gives an ambulatory character to the offence, by the movable character and the guilty possession of the goods

stolen, there could be no doubt of the law, and no plausible pre-
tence that our law had been violated, or the party amenable to
penalties created by.it.    Hence the necessity, in the constitution
of the United States, establishing the Union, for a fundamental
clause providing for the mutual surrender of fugitives from jus-
tice, and also for treaties of extradition providing for the mutual
surrender by our government of persons charged with crimes in
another.

We have not overlooked the case of *The State* v. *Bartlett*, 11
Verm. 650, in which it was held, that where oxen were stolen in
Canada, and by the thief brought into Vermont, the thief might
be indicted and convicted, on the ground that such had been the
practice.    We think the case is not supported by the current of
authorities, and is contrary to principle.

If this were a mere question of jurisdiction, of the place
where a party should be tried, it would be substantially a tech-
nical question; but it stands on very different grounds.    Here
the question is one of principle, whether the defendants have
violated our law.    It is said that they commit a new theft, by
the possession of stolen goods in our jurisdiction.    But what
are stolen goods?    Are we to look to our own law, or to the
law of Nova Scotia, to determine what is a felonious taking,
what is the *animus furandi*, and the like ?    If we look to the
law of Nova Scotia, and that law is different from ours, in de-
fining and prescribing theft, then we may be called on to punish
as a crime that which would be innocent here.    If we look
to our own law, then a taking and carrying away of goods in
Nova Scotia, under circumstances which would not be criminal
there, might be punishable here.    Foreigners, coming within our
jurisdiction with goods, and complying with customary regula-
tions, commit no offence, and commit none in removing them
from place to place in the same or different counties.    If they
can be indicted and punished here, on the ground that such goods
were stolen goods when they were brought in, it is but another
mode of charging that the goods were obtained by a violation
of the criminal laws of another country, and our courts must nec-
essarily take jurisdiction of the violations of the criminal laws of

foreign independent governments, and punish acts as criminal here, solely because they are in violation of the laws of such government, and which, but for such violation, would not be punishable here. It seems difficult to distinguish this from judicially enforcing and carrying into effect the penal laws of another government, instead of limiting our criminal jurisprudence to the execution of our own. *New trial ordered.*

*J. H. Clifford,* (Attorney General,) for the Commonwealth.

*J. H. Bradley,* for the defendant.