McIlvaine, J.
At the November term, 1873, of the Court of Common Pleas of Cuyahoga county, the plaintiff in error, William Stanley, was convicted of the crime of grand larceny, and sentenced for a term of years to the penitentiary.
The indictment upon which he was convicted charged “ that William Stanley, late of the county aforesaid, on the twentieth day of June, in the year one thousand eight hundred and seventy-three, at the county aforesaid, with force and arms,” certain silverware, “of the goods and chattels and property of George P. Harris, then and there being, then and there unlawfully and feloniously did steal, take, and carry away,” etc.
The following facts were proven at the trial: 1. That the goods described in the indictment belonged to Harris, and were of the value of one hundred and sixty-five dollars. 2. That they were stolen from Harris on the 20th of June, 1873, at the city of London, in the dominion of Canada. 3. That they were afterward, on the 26th day of same month, found in the possession of the defendant, in said county of Cuyahoga. It is also conceded that, in order to convict, the jury must have found that the goods were stolen by the defendant in the dominion of Canada, and carried thence by him to the State of Ohio.
Upon this state of facts, was the prisoner lawfully convicted? In other words, if property be stolen at a place beyond the jurisdiction of this state and of the United States, and afterward brought into this state by the thief, can he be lawfully convicted of larceny in this state ?
In view of the free intercourse between foreign countries and this state, and the immense immigration aiid importa *168 tion.of property from abroad, this question is one of very great importance; and I may add, that its determination is unaided by legislation in this state.
In resolving this question, we have been much embarrassed by a former decision of this court, in Hamilton v. The State, 11 Ohio, 435. In that case, it was held by a majority of the judges, that a person having in his possession in this state property which had been stolen by him in another state of the Union, might be convicted here of larceny.
The decision appears to have been placed upon the ground, “that a long-sustained practice, in the criminal courts of this state, had settled the construction of the point, and established the right to convict in such cases.”
Whether that decision can be sustained upon the principles of the common law or not, it must be conceded that for more than thirty years it has stood, unchallenged and unquestioned, as an authoritative exposition of the law of this state. And although it has received no express legislative recognition, it has been so long followed in our criminal courts, and acquiesced in by other departments of the government, that we are inclined to the opinion that it ■ought not now to be overruled; but, on the other hand, its rule should "be applied and sustained, in like eases, upon the principle of stare decisis.
Before passing from Hamilton v. The State, it should be added that the same question has been decided in the same way by the courts of several of our sister states. The State v. Ellis, 3 Conn. 185; The State v. Bartlett, 11 Vt. 650; The State v. Underwood, 49 Maine, 181; Watson v. The State, 36 Miss. 593; The State v. Johnson, 2 Oregon, 115; The State v. Bennett, 14 Iowa, 479; Ferrell v. Commonwealth, 1 Duvall, 153; Commonwealth v. Collins, 1 Mass. 116. The same point has been decided the same way in several subsequent cases in Massachusetts.
The exact question, however, now before us has not been decided by this court; and we are unanimously of opinion that the rule laid down in Hamilton v. The State should *169 not be extended to cases where the property was stolen in a foreign and independent sovereignty.
We are unwilling to sanction the doctrine orto adopt the practice, whereby a crime committed in a foreign country, and in violation of the. laws of that country only, may, by construction and a mere fiction, be treated as an offense committed within this state and in violation of the laws thereof. In this case the goods were stolen in Canada. They were there taken from the custody of the owner into the custody of the thief. The change of possession was ■complete. The goods were afterward carried by the thief from the Dominion of Canada to the State of Ohio. During the transit his possession was continuous and uninterrupted. Now, the theory upon which this conviction is •sought to be sustained, is, that the legal possession of the goods remained all the while in the owner. If this theory be true, it is true as a fiction of the law only. The fact was otherwise. A further theory in support of the conviction is, that as soon as the goods arrived within the State of Ohio, the thief again took them from the possession of the owner into his own possession. This theory is not supported by the facts, nor is there any presumption of law to ■sustain it.
That the right of possession, as well as the right of property, remained all the time in the owner is true as matter of law. And it is also true, as a matter of fiction, that the possession of the thief, although exclusive as it must have been in order to make him a thief, is regarded as the possession of the owner, for some , purposes. Thus, stolen goods, while in the possession of the thief, may be again stolen by another thief; and the latter may be charged with taking and carrying away the goods of the owner. And for the purpose of sustaining such charge, the possession of the first thief will be regarded as the possession of the-true owner. This fiction, however, in no way changes the nature of the facts which constitute the crime of larceny.
'What we deny is, that a mere change of place by the thief, while he continues in the uninterrupted and exclusive *170 possession of the stolen property, constitutes a new “ taking ” of the property, either as matter of fact or of law.
Larceny, under the statute of this state, is the same as at common law, and may be defined to be the felonious taking and carrying away of the personal property of another. But no offense against this statute is complete until every act which constitutes an essential element in the crime, has been committed within the limits of this state. The act of “ taking ” is an essential element in the crime, and defines the act by which the possession of the property is changed from the owner to the thief. But the act of “taking” is not repeated, after the change of possession is once complete, and while the possession of the thief continues to be exclusive and uninterrupted. Hence, a bailee or finder of goods, who obtains complete possession without any fraudulent intent, can not be convicted of larceny by reason of any subsequent appropriation of them.
We fully recognize the common-law practice, that when property is stolen in one county, and the thief is afterward found in another county with the stolen property in his possession, he may be indicted and convicted in either county, but not in both. This practice obtained notwithstanding the general rule that every prosecution for a criminal cause must be in the county where the crime was committed. The reason for the above exception to the general rule is not certainly known, nor is it important in this case-that it should be known, as it relates to the matter of venue only, and does not affect the substance of the offense. We are entirely satisfied, however, that the right to prosecute the thief in any county wherein he was found in possession of the stolen property, was not asserted by the crown,, because of the fact that a new and distinct larceny of the goods was committed whenever and wherever the thief might pas3 from one county into another. His exemption from more than one conviction and punishment makes this proposition clear enough. The common law provided that no person should be twice vexed for the same cause. It waa through the operation of this principle that the thief, who *171 stole property in one county and was afterward found with the fruits of his crime in another, could not be tried and convicted in each county. He was guilty of one offense only, and that offense was complete in the county where the property was first “taken”.by the thief, and removed from the place in which the owner had it in possession.
When goods piratically seized upon the high seas were afterward carried by the thief into a county of England, the common-law judges refused to take cognizance of the larceny, “because the original act — namely, the taking of them • — was not any offense whereof the common law taketh knowledge; and by consequence, the bringing them into a county, could not make the same a felony punishable by our law.” 13 Coke, 53. 3 Inst; 113; 1 Hawk., c. 19, sec. 52.
The prisoner was charged with larceny at Dorsetshire, where he had possession of the stolen goods. The goods had been stolen by him in the island of Jersey, and afterward he brought them to Dorsetshire. The prisoner was convicted.. All the judges (except Raymond, C. B., and Taunton, J., who did not sit) agreed that the conviction was wrong. Rex v. Prowes, 1 Moody C. C. 349.
Property was stolen by the prisoner in Erance, and was transported to London, where it was found in his possession. Parke, B., directed the jury to acqnit the prisoner on the ground of the want of jurisdiction, which was done. Regina v. Madge, 9 Car. & P. 29.
A similar decision was made in a case where the property was stolen in Scotland and afterward carried by the thief into England. 2 East P. C. 772, c. 16, sec. 156.
This rule of the common law was afterward superseded, in respect to the United Kingdom, by the statutes of 13 Geo. 3, c. 31, sec. 4, and 7 and 8 Geo. 4, c. 29, sec. 76, whereby prosecutions were authorized in any county in which the thief was found, in possession of property stolen by him in any part of the United Kingdom.
In Commonwealth v. Uprichard, 3 Gray, 434, the property had been stolen in the province of Nova Scotia, and *172 •thence carried by the thief into Massachusetts. The defendant was convicted of larceny charged to have been committed in the latter state. This conviction was set aside by a unanimous court, although two decisions had been made by the same court affirming convictions, where the property had been stolen in a sister state, and afterward brought by the thief into that commonwealth. Without • overruling the older cases, Chief Justice Shaw, in delivering the opinion of the court, distinguished between the two classes of cases.
The following cases are in point, that a state, into which •stolen goods are carried by a thief from a sister state, has no jurisdiction to convict for the larceny of the goods, and -a fortiori when the goods were stolen in a foreign country :
In New York: People v. Gardner, 2 Johns. 477; People v. Schenk, 2 Johns. 479. The rule was afterward changed in that state by statute. New Jersey: The State v. Le Blanch, 2 Vroom, 82. Pennsylvania: Simmons v. Commonwealth, 5 Binn. 617. North Carolina: The State v. Brown, 1 Hayw 100. Tennessee: Simpson v. The State, 4 Humph. 456. Indiana: Beall v. The State, 15 Ind. 378. Louisiana: The State v. Reonnals, 14 L. An. 278.
There are two cases sustaining convictions for larceny in the states, where the property had been stolen in the British Provinces: The State v. Bartlett, 11 Vermont, 650, and The State v. Underwood, 49 Maine, 181. In Bartlett’s case, the principle is doubted, but the practice adopted in ■cases where the property was stolen in a sister state was followed, and the application of the principle thereby extended. Underwood’s case was decided by a majority of the judges.
After reviewing the cases, we think the weight of authority is against the conviction and judgment below. And in the light of principle, we have no hesitancy in holding that the court below had no jurisdiction over the offense •committed by the prisoner.
The judgment below is wrong, unless every act of the *173 defendant, which was necessary to complete the offense,, was committed within the State of Ohio and in violation of the laws thereof. This proposition is not disputed. It is conceded by the prosecution that the taking, as well as the removal of the goods animo furandi, must have occurred within the limits of Ohio. It is also conceded that the-first taking, as well as the first removal of thegoods alleged in this case to have been stolen, was at a place beyond the-limits of the state, and within the jurisdiction of a foreign and independent sovereignty. Now, the doctrine' of all the cases is that the original “taking” and the original asportation of the goods by the prisoner must have been under such circumstances as constituted a larceny. If the-possession of the goods by the defendant before they were brought into this state was a lawful possession, there would be no pretense that the conviction was proper. The same, if his possession was merely tortious. The theory of the law, upon which the propriety of the conviction is claimed, is based on the assumption that the property was stolen in Canada by the prisoner.
By what rule shall it be determined whether the acts of the prisoner, whereby he acquired the possession of the goods in Canada, constituted the crime of larceny ? By the laws of this state ? Certainly not. The criminal laws of this state have no extraterritorial operation. If the acts • of the prisoner, whereby he came in possession of the property described in the indictment, were not inhibited by the laws of Canada, it is perfectly clear that he was not guilty of larceny there. It matters not that they were such as-would have constituted larceny if the transaction had taken place in this state.
Shall the question whether or not the “ taking” of the property by the prisoner was a crime in Canada be determined by the laws of that country ? If this be granted, then an act, which was an essential element in the combination of facts of which Stanley was found guilty, was in violation of the laws of Canada, but not of this state; and it was because the laws of Canada were violated that the- *174 prisoner was convicted. If the laws of that country had been different, though the conduct of the prisoner had been the same, he could not have been convicted. I can see no way to escape this conclusion, and if it be correct, it follows that the acts of the prisoner in a foreign country, as well as his acts in this state, were essential elements in his offense; therefore, no complete offense was committed in this state against the laws thereof.
I have no doubt the legislature might make it a crime for a thief to bring into this state property stolen by him in a foreign country. And in order.to convict of such •crime, it would be necessary to prove the existence of foreign laws against larceny. The existence of such foreign laws would be an ingredient in the statutory offense. But that offense would not be larceny at common law, for the reason that larceny at common law contains no such element. It consists in taking and carrying away the goods of another person in violation of the rules of the common law, without reference to any other law or the laws of any other country.
It may be assumed that the laws of meum et tuum prevail in every country, whether civilized or savage. But this state has no concern in them further than to discharge such •duties as are imposed upon it by the laws of nations, or through its connection with the general government, by treaty stipulations.
Our civil courts are open for the reclamation of property which may have been brought within our jurisdiction, in violation of the rights of the owner; but our criminal courts have no jurisdiction over offenses committed against the sovereignty of foreign and independent states.

Judgment reversed, and cause remanded.

Day, C. J., 'Welch, Stone, and White, JJ., concurring.