THE STATE OF CONNECTICUT *against* PETER CARRIER.

MOTION for a new trial.

This was an information upon the statute for the punishment of the crime of burglary. (*a*)   The information consisted of three counts; in the first of which, it was alleged, that the prisoner, in the night season, on the 13th day of *March,* 1810, with force and arms, feloniously and burglariously, broke up and entered a certain apartment of the sloop *Jennet,* then lying in the harbour of *New-Haven,* called the *Fore-Peake,* the same being a *shop* wherein goods, wares and merchandize were deposited," &c.   It was alleged in the second count, that the prisoner, at the same time, with the same intent, and with force and arms, broke up and entered another apartment of said sloop, called a *cabin,* " the same being a *dwelling-house,*" &c.

The cause was tried before the Superior Court, at *New-Haven, August* term 1810, on the plea of *not guilty.*

The court, in their charge, directed the jury, in case they should find the facts stated in the information to be true, that it would be their duty to find the prisoner guilty; and that the breaking and entering a vessel, in the manner stated in the information, amounted to the crime of burglary.   The jury having found the prisoner guilty, he moved for a new trial, on the ground of a misdirection; which motion was reserved for the consideration of the nine judges.

(*a*) 1 *Stat. Com.* tit. 66. c. 3.

The act of breaking and entering the cabin of a vessel in the night season, with intent to commit a felony, is burglary within the meaning of the statute.

June, 1811.

THE STATE
*v.*
CARRIER.

*N. Smith* and *Staples,* argued in support of the motion.

*Daggett* and *R. I. Ingersoll,* contra.

REEVE, J. The question in this case is, whether it is burglary, to break open and enter the cabin of a vessel, in the night season, with intent to commit a felony ? On this subject, no light can be collected from the *English* law ; for, unquestionably, such a transaction is not burglarious under that law ; it depends wholly on our own statute, which has extended the crime of burglary to breaking and entering a shop, wherein goods, wares and merchandize are deposited, with an intent to commit a felony. The statute has not defined burglary, but left it as it was at common law ; only extending to shops, in which, by the common law, burglary could not be committed, unless so nearly adjoining the mansion-house, as to be within the curtilage, and in point of law, considered as part of the mansion-house. But, by our statute, it is burglary to break open burglariously a shop, in which goods, wares, &c. are deposited ; that is, to break it open and enter therein, in the night season, with an intent to commit a felony, let the shop be situated as it may.

This case depends upon the true construction of the term *shop.* If a cabin, in which goods, wares and merchandize are deposited, can with propriety be deemed a shop, then burglary may be committed therein. If this was altogether a new question, I think some doubt might be entertained whether it could be embraced under the term shop ; but there has been, ever since the enacting of the statute, an uniform construction by the Superior Court, that such cabin is a shop. Such construction has been known to the legislature, and by their total silence on the subject, we may fairly infer their approbation of it. One thing is clear, that such cabin is as much within the reason of the law, as a shop, as commonly understood. It is as much exposed to burglarious depredations as any shop. The turpitude of the crime is as great in one case as the other, and the evil to the public is the same ; and if a different construction should now obtain, it

would seem reasonable, that a statute should be enacted to make it burglary, thus to break and enter a cabin, where goods, wares, &c. are deposited ; otherwise, the same protection of the law would not be extended to such property, when deposited in a cabin, as when deposited in a shop.

The legislature finding, that the courts have considered a cabin, a shop, within the intent of the law, are satisfied with it ; and therefore, have made no law extending burglary, in the terms of it, to a cabin. When I take into view the evil which the legislature intended to punish, and that this is as great when a cabin is broken, as when any other shop is broken, and that there has been an uniform construction, that such cabin is a shop, I am of opinion, that the charge was correct, and would not advise a new trial.

MITCHELL, Ch. J., TRUMBULL, EDMOND, and BALDWIN, Js. severally concurred in this opinion.

INGERSOLL, J. having been of counsel in this case, did not judge.

SMITH, J. By statute, the crime of burglary may be committed by breaking open a shop, wherein goods, wares and merchandize are deposited, the same as by breaking open a dwelling-house. The only question involved in the present case, is, whether the cabin of a vessel may be considered, either a shop or dwelling-house, within the meaning of the statute ?

I have great occasion to suspect the soundness of my own judgment, in this case, finding my opinion not to be supported by any of my brethren. But, I cannot persuade myself, that the *cabin* of a vessel is either a *shop*, or a *dwelling-house*. These are all buildings perfectly distinct from each other, with appropriate names, which are well understood ; and although each may be built of similar materials, and occasionally used for similar purposes, yet, their peculiar shapes and appearance, as well as the great purposes for which each is built and used, leave no room for mistake, in the ordinary

June, 1811.

THE STATE
v.
CARRIER.

use of language. No man understands us to mean a cabin of a vessel, when we speak either of a shop or a dwelling-house.

In *England*, it has never been considered burglary to break open the cabin of a vessel. They have no statute, I am aware, making it burglary to break a shop in the night season; but the argument is much stronger in favour of calling a cabin, a dwelling-house, than a shop, because it is much more generally used for the dwelling of persons than the storing of goods; yet, in that country, no man ever supposed, that the cabin of a vessel, could be called a dwelling-house, in which burglary could be committed.

It was said, by the counsel, that there has been a course of decisions in the Superior Court, extending the statute to all offences within its mischief, and that many convictions, have been had, for breaking open cabins, and school-houses, and paper-mills; and that this practice has passed under the eye of the legislature, and received its tacit assent.

The principle of law involved in this argument, is of very extensive application, and ought to be fully considered, before adopted: It will extend to all other penal statutes, as well as that punishing burglary; and it will extend to all subordinate jurisdictions, as well as to the Superior Court, and the Supreme Court of Errors. What, then, is the principle contended for? It is, that a statute highly penal, may be extended to every offence, which, in the opinion of the court, comes within its mischief, without regard to its letter. That such a principle should be adopted by this court, is to me, a subject of regret.

I cannot admit, that any course of adjudications by the Superior Court, however long and uniform, can form an insuperable objection to a revision before this Court. The Supreme Court of Errors was constituted for the sole purpose of correcting the errors of the Superior Court; and it is a strange argument, that the number and uniformity of the errors of that court, transforms them into a correct procedure. If such an argument has validity, the Superior Court will, of course, settle most of our criminal law; for,

generally, no person will be found able to bring up a question, which is ruled against a prisoner, until several decisions will be had on the point, before that court. I deem it peculiarly favourable to a correct result, that no such decision, has had the sanction of this Court.

As to any supposed acquiescence, or indirect sanction of the legislature, I would remark, that the legislature, before any of these decisions had taken place, constituted the Court of Errors to revise and correct the erroneous proceedings of the Superior Court; and if this subject happened to occur to any honourable gentleman, while on the seat of legislation, he doubtless felt a confidence in this court; and probably concluded, that the common law, in the construction of statutes, would be fully regarded, at least, in the court of dernier resort. But, is any omission or tacit assent of the legislature, to have the effect to alter the rule of construing statutes? Are we to refuse to construe according to law, statutes already made, because the legislature neglects to make another?

Besides, no statute could be framed, which would be adequate to remove the evil in its full extent; unless, it be one of quite a novel complexion; and which, in my opinion, must be drawn nearly in the following words :

" Be it enacted, that hereafter, the Superior Court and Supreme Court of Errors, shall construe penal statutes *strictly*, according to a well known principle of the common law."

SWIFT. J., said he should have concurred in the opinion delivered by judge *Smith*, if this had been a new case; but there had been an uniform course of adjudications, on this subject, in the Superior Court, for fifty years, and he would not break in upon it.

New trial not to be granted.