THE STATE vs. CHARLES W. FETTERER.

Third Judicial District, Bridgeport, October Term, 1894. ANDREWS, C. J.,
    TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Chapter 121 of the Public Acts of 1893, which prohibits any person from
    engaging in the business of an auctioneer, peddler, or hawker of goods,
    wares and merchandise, without a license, does not apply to the busi-
    ness of a wholesale dealer having a fixed establishment in one town,
    in his sales to retail store-keepers in other towns by means of traveling
    salesmen and delivery carts; such salesmen are not "peddlers" within
    the meaning of the Act.

Section 1630 of the General Statutes provides that the court shall state its
    opinion to the jury upon all questions of law arising in the trial of a
    criminal cause, and submit to their consideration both the law and the
    facts, without any direction how to find their verdict. The court
    detailed the facts claimed to have been proven by the State, (about
    which in the present case there was no dispute) and instructed the
    jury that if they found those facts they ought to render a verdict of
    guilty; adding that the statute under which the defendant was prose-
    cuted was a valid law and one which the jury should obey until it was
    repealed or declared invalid by the highest court of the State. Held
    that the charge was unexceptionable in manner and form and not in
    conflict with the statutory provisions.

[Argued October 24th—decided December 1st, 1894.]

CRIMINAL PROSECUTION for a violation of the law relating
to peddlers; brought originally before a justice of the peace
in the town of Branford and thence by the defendant's appeal
to the criminal side of the Court of Common Pleas for New
Haven County, where the accused was tried to the jury before
*Hotchkiss, J.;* verdict and judgment of guilty, and appeal
by the defendant for alleged errors of the court in its charge
to the jury. *Error and new trial granted.*

The case is sufficiently stated in the opinion.

*William S. Pardee,* for the appellant (defendant).

The court erred in charging, upon the conceded facts, that
the defendant was a peddler. Century Dictionary; Web-
ster's Dictionary; Worcester's Dictionary; *Randolph* v.

*Yellowstone Kit*, 83 Ala., 474; *Village of Stamford* v. *Fisher*, 140 N. Y., 187; *Com.* v. *Ober*, 12 Cush., 493; *Newman* v. *The State*, 2 Swan, 354; *Com.* v. *Gardner*, 133 Pa. St., 289.

A careful reading of the statute will show that the intention of the legislature was to give to the selectmen power to pass upon each applicant separately and to fix the term and the fee for him. And this, so far as it appears, is what the Branford selectmen did.

It needs no argument to show that a law which permits the same body of selectmen to say to one tin-ware peddler, you may peddle in Branford one year for one dollar, and to another in the same business, you may peddle in Branford one year for thirty thousand dollars, is unreasonable and beyond the power of any government in the United States to pass.

*George M. Gunn*, for appellee (the State).

BALDWIN, J. Chapter CXXI. of the Public Acts of 1893 (p. 271), provides that the selectmen of any town may issue licenses to such persons as they find proper persons to engage in the business of auctioneer, peddler, or hawker of goods, wares, and merchandise, or as traveling itinerant purchasers of junk or other second hand goods, in their respective towns, for a term not exceeding one year, upon payment to the town of a fee not less than one dollar nor more than one hundred dollars, as they may direct; and that any person engaging in any such business, except in the sale of products of a farm or of the sea, without a license, shall be guilty of a misdemeanor.

The defendant was convicted of peddling candies in the town of Branford, without a license, and on the trial it was claimed by him, and not denied by the State, that at the time of the acts complained of, he had driven over to Branford, as the agent of a wholesale confectioner in New Haven; that he was accustomed to go there in the same way once a fortnight, with a wagon loaded with unbroken packages of candy; that there were several stores in Branford, kept by

regular customers of his employer, at which candy was sold at retail, and he went from store to store, soliciting orders; that if he obtained an order, and could fill it from his wagon, he did so, but otherwise booked it, to be filled by a subsequent delivery; that the purchases were generally made for cash, but occasionally on credit, and were confined to such as were necessary to keep up the stock in the respective stores; that he never sold or offered to sell at Branford except to these storekeepers, and sold to them only at regular wholesale prices; and that on his way to Branford he went through East Haven, and sold to the storekeepers there in the same way, and to no one else.

The court charged the jury in substance that there was no dispute about the facts, and if they found them to be as thus claimed, it was a case of peddling; and if the defendant had obtained no license as a peddler, they ought to render a verdict of guilty; adding, that the statute was a valid law, the wisdom of which was a matter with which the court and jury had nothing to do, their duty being to obey it, until it was repealed or declared invalid by the highest court of the State.

These instructions furnish no ground of appeal by reason of the manner or form in which they stated the opinion of the court, as to the duty of the jury. The court, in a criminal case, cannot direct the return of any particular verdict; but the same statute which forbids it, provides with equal distinctness that the court shall state its opinion to the jury upon all questions of law arising on the trial, and submit to their consideration both the law and the facts. General Statutes, § 1630. The legislature has not dictated the mode of such submission, but the duty of making it is an active and important one. The matters submitted must be stated, and stated plainly. Whether this should be done in few words, or many; with comments on the evidence, or without comments; with or without an expression of opinion as to what verdict, in view of the law and the evidence, may seem to the court to be a proper one, are questions as to which the statute prescribes no rule, except that it is beyond

the power of the court to direct a verdict, either of convic-
tion or acquittal.

Until the present century came in, the courts of Connect-
icut did not exercise, and perhaps did not possess, the power
of instructing, or even advising the jury as to matters of law,
either in civil or criminal cases.   The practice was thus
stated by JUDGE SWIFT in 1796: " The court give no opin-
ion with regard to the points of law arising in the case, nor
does the judge give them any direction how to find the ver-
dict, but the whole case is committed to them as relative to
the law arising out of the facts, as well as the facts them-
selves."   2 Swift's System, 258.   Such a mode of procedure,
though sanctioned by long usage, became the object of just
criticism, soon after provision was made, by the legislature,
in 1784, for recording the opinions of the judges of the Supe-
rior Court upon matters of law presented on issues tried
without a jury, so that " thereby a Foundation be laid for a
more perfect and permanent System of common Law in this
State."   Statutes, Rev. of 1784, p. 267 ;  2 Swift's Dig., 412 ;
Swift's Evidence, 169.   The Supreme Court of Errors was re-
constituted in 1806, by the substitution on the bench of the
judges of the Superior Court for the Governor, Lieutenant
Governor and Council;  and in May, 1807, it was authorized
to institute such rules of practice for the regulation of the
Superior Court as should be " deemed most conducive to the
administration of justice."   Statutes, Rev. of 1810, pp. 218,
221.   A few days later, a rule of court was adopted that in
charging a jury the judge should " state to them the several
points of law which may arise, and declare to them the opin-
ion of the court thereon."   3 Day, 28.   It thereupon became
the practice to instruct the jury definitely as to their duty in
criminal causes in view of the law applicable thereto.   Thus,
in State v. Carrier, 5 Day, 131, they were charged " in case
they should find the facts stated in the information to be
true, that it would be their duty to find the prisoner guilty ; "
in State v. Ellis, 3 Conn., 185, they were told that if they
found certain " facts to be proved, they must find the defend-
ant guilty ; " and in State v. Smith, 5 Day, 175, the ground on

which a new trial was asked was " that the court charged the jury, that if they should find the facts set forth in either count, to be proved, they ought to find the prisoner guilty; and did not direct them to find him not guilty, upon the counts not proved." In 1812, a statute was enacted declaring that " it shall be the duty of the Superior, County, and City Courts, in committing any cause, whether civil or criminal, to the jury, to state to them their opinion as to the law arising in the case, and to submit to them the questions of fact without any opinion thereon, *provided*, that nothing herein contained shall be construed to imply, that said courts had, or had not, before the passing of this act, the power to give any directions to the jury, as to finding the facts." Session Laws of 1812, p. 106.

This prohibition against the expression of any opinion upon the facts was dropped in the next revision of the statutes, that of 1821, in which the provisions were made which still remain in force, and are contained in §§ 1101 and 1630 of the General Statutes, Revision of 1888. Section 1101 distinctly requires the court in civil causes to direct a verdict, where it depends upon a question of law; forbids it to direct the jury how they shall find the facts; but provides that in submitting to them questions of fact, it shall make such observations on the evidence as it may think proper. Section 1630, which concerns criminal causes, is silent with regard to the making of observations on the evidence, requires a statement of opinion as to all questions of law, and forbids any direction how to find a verdict.

There can be no question that these provisions, when they appeared in the Revision of 1821, were intended to bring our practice as to charging juries into nearer accord with the common law, (Stat., Rev. of 1821, 49, note,) and they must be construed with reference to the principles of that system. *Leavenworth* v. *Marshall*, 19 Conn., 1, 4. They were meant to assure to the court a right to give such assistance to the jury in coming to a correct conclusion, as the circumstances of the case may require,—a right more essential even in criminal than in civil proceedings, since in

those of the former class personal liberty is always in some degree involved. *State* v. *Rome*, 64 Conn., 329, 337.

Greater reserve will naturally be maintained in remarks of this character addressed to a jury, in cases where grave offenses are charged, than in prosecutions for a misdemeanor, involving no moral turpitude. *State* v. *Hawley*, 63 Conn., 47 ; *State* v. *Coffee*, 56 id., 399, 409, 417. In the case at bar, we think the form of the charge was unexceptionable, under the view of the law which was taken by the judge.

It is, however, our opinion that the Act of 1893, which is in question, does not have the meaning assigned to it by the Court of Common Pleas. It is entitled " An Act concerning sales of Merchandise by Itinerant Peddlers," and the licenses for which it provides are to be issued to persons proposing to "engage in the business " of auctioneer, peddler, or hawker, or " traveling itinerant purchasers of junk or other second-hand goods," in a certain town for a certain term. The word " peddler " is commonly used to describe one who travels about, retailing small wares. Webster's International Dict., *in verb*. It carries the idea of pettiness as respects the character of the business transacted. The original root of the word is *ped*, meaning " basket " in old English, and descriptive of the receptacle in which a peddler carries his goods about for sale. It would do violence to the language of a statute whose title describes it as one concerning sales by "itinerant peddlers," to make it apply to the business of a wholesale dealer having a fixed establishment in one town, and dealing with retail storekeepers in other towns by means of traveling salesmen and delivery carts. A peddler usurps the place of a retail dealer, and comes between him and the consumer who might otherwise be his customer. The defendant, as agent for a wholesaler, supplied the retail stores in wholesale lots, so as to enable them to serve their customers. That he solicited orders and, if he could, filled them on the spot from the stock in his wagon, put him in no different position from that which he would have occupied, had he delivered no goods that had not previously been bespoken. His act, in either case,

would have been that of his employer, done in the natural course of wholesale trade with country merchants. The statute contemplates only the licensing of a transient business for a brief period. An auction sale, the advent of a peddler with his pack or cart, the cry of a hawker, or the appearance of a junk dealer's wagon on the street, is an occasional thing. These occupations are *ejusdem generis*, and it would be an unwarrantable construction of a penal statute as to granting licenses to those who pursue them, to hold that it affected a permanent business of a wholesale character, having a fixed seat, because the proprietor maintained communication with his customers in surrounding towns by means of itinerant agents, who made regular trips from one retail store to another, but sold to none outside of the trade. *Village of Stamford* v. *Fisher*, 140 New York, 187, 35 Northeastern Rep., 500.

The sixth request of the defendant for instructions to the jury was as follows : "If the jury finds that the accused was a regular employed driver, at wages, of the wholesale dealer in New Haven ; and that as such driver he went over to Branford once in two weeks, either of a Tuesday or Wednesday, or a Thursday ; and that when in Branford he called at the candy stores in Branford which kept candy for sale at retail, and at no other stores ; and that he did not at any time sell, or offer to sell, any candy to any person whatsoever, except the keepers of such stores ; and that such storekeepers habitually kept the goods carried by the driver in their stores for sale ; and that they, the storekeepers, depended upon the driver's coming, to keep their stock up; and that the storekeepers were regular customers of the wholesale dealer, or driver ; (and if you find that they sometimes got goods credited, and sometimes paid cash, you will consider this fact in determining whether they were regular customers, or not ;) and if you find that the goods sold were in wholesale lots, which the storekeepers bought to sell again at retail, and that the driver never sold at retail, then the driver is not a peddler, and your verdict should be 'Not guilty.'"

The instructions thus asked for were correct in law and adapted to the case, and the appeal, on account of the refusal to give them, as well as on account of the charge as given, is well founded.

A new trial is granted.

In this opinion the other judges concurred.