THE STATE vs. AMASA MAIN.

Second Judicial District, Norwich, October Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Section 1630 of the General Statutes provides that the court shall state its opinion to the jury upon all questions of law arising in the trial of a criminal cause, and submit to their consideration both the law and the facts, without any direction how to find their verdict. *Held* that whatever effect this provision might have upon the powers of a jury over statutory or common law questions, it certainly did not make it the duty of the court to submit to the determination of the jury the meaning and effect of the Constitution of this State, in its bearing upon the validity of a statute under which the accused was prosecuted. Under such circumstances it is the duty of the court to instruct the jury as to the constitutionality or unconstitutionality of the statute, and the duty of the jury to accept the construction of the Constitution which is placed upon it by the court.

Chapter 216 of the Public Acts of 1893 created the office of commissioner of peach yellows, declared that certain kinds of trees diseased by the "yellows" were a public nuisance, and required them to be destroyed by their owner upon the order of the commissioner or his deputy, or by the latter in case of the owner's neglect or refusal. The Act prescribed a fine of not less than one hundred nor more than five hundred dollars for a refusal to destroy diseased trees, and provided that no compensation should be paid the owner on account of such destruction. In a criminal prosecution against the defendant for refusing to destroy trees alleged to be diseased by peach yellows, it was *held*:—

1. That the existence and dangerous nature of the disease known as "peach yellows" was a matter of common knowledge, of which the court could take judicial notice; and that the defendant had no right to have the jury pass upon the danger of contagion from trees affected

by the "yellows," as a means of determining the constitutionality of the statute.

2. That inasmuch as the trial court was authorized to take judicial not' of the meaning of the term "yellows," or "peach yellows," as defineu by common usage, the question whether the Act was void for doubt and uncertainty as to the nature of the disease, depended simply upon the construction of a written document and, as such, was one for the court.

3. That if the trees destroyed were in fact diseased with the "yellows," the provisions for their summary abatement, as a dangerous public nuisance, were not in violation of constitutional requirements, State or Federal, nor of principles of natural justice.

4. That the question whether the fine was excessive, was properly disposed of by the trial court as one of law; and that such fine was not so clearly disproportioned to the offense as necessarily to violate the constitutional prohibition.

A wide-spread apprehension throughout a community that a deadly disease of a food-producing tree is contagious, is a sufficient basis for legislative action requiring the destruction, without compensation to the owner, of trees so affected; unless it also appears that no reasonable ground for such apprehension could exist.

The trial court charged the jury that as the legislature had by the Act declared trees diseased by the "yellows" to be a public nuisance, that decision was final and obligatory on them. *Held* that whether this instruction was correct or not, it did the defendant no harm, because it related only to the constitutionality of the statute, which had already been upheld by the court in definite and correct instructions to the jury.

The record of a public board cannot be collaterally attacked by the oral impeaching testimony of its secretary.

The person who issued the order for the destruction of the defendant's trees, was asked what position he held at that time, and stated that he was then acting as deputy commissioner of peach yellows. *Held* that the reception of this answer, whether admissible or not, was rendered harmless by the subsequent introduction of a copy of record showing his due appointment.

The acceptance of a public office and the performance of its duties, is a circumstance which a court may consider in determining whether to permit the incumbent to testify as an expert in matters relating to his official duty, even if he should not be regarded as presumably qualified by virtue of his office.

The decision of a trial judge in admitting a witness to testify as an expert, will not be reviewed unless it is clearly shown to have been based on incompetent or insufficient evidence.

[Argued October 20th, 1896—decided April 6th, 1897.]

INFORMATION for a violation of the statute relating to "peach yellows," brought to the Superior Court in New

London County and tried to the jury before *Shumway, J.;* verdict and judgment of guilty, and appeal by the defendant for alleged errors in the rulings and charge of the court. *No error.*

The case is sufficiently stated in the opinion.

*Donald G. Perkins,* for the appellant (defendant).

The statute in question is unconstitutional. It condemns existing trees which a man lawfully owned, and expressly provides that no damage shall be paid for their destruction. It also requires a man to give his services to the public without compensation, in destroying his own property, in a case where speedy and summary action is not required and when the public safety and health are not in question. This distinguishes the case from *State v. Wordin,* 56 Conn. 225. The Act deprives the owner of his property without notice, without compensation, and without due process of law. *Averill* v. *Hull,* 37 Conn. 323; *Ieck* v. *Anderson,* 57 Cal. 251; *Dunn* v. *Burleigh,* 62 Me. 24; *King* v. *Hayes,* 80 id. 206; *State* v. *Snow,* 3 R. I. 74; *Varden* v. *Mount,* 78 Ky. 86; *River Rending Co.* v. *Behr,* 77 Mo. 91; *Lowry* v. *Rainwater,* 70 id. 152; *Wadsworth* v. *Union Pacific,* 35 Pac. Rep. 315. The appeal provided for in this Act is not due process of law, and a man cannot be compelled to take such action himself to save his property. *Baker* v. *Kelly,* 11 Minn. 495; *Westervelt* v. *Gregg,* 12 N. Y. 209; *Wynehamer* v. *People,* 13 id. 395; 2 Hare's Am. Cons. Law, 772–774. The law is not a valid exercise of the police power of the legislature. *People* v. *Jackson Road Co.,* 9 Mich. 285; Tied., Police Power, §§ 1, 3; *Lakeview* v. *Rose Hill Cemetery,* 70 Ill. 192; *State* v. *Noyes,* 47 Me. 189; *Bishop* v. *O'Reilly,* 74 N. Y. 509; *Application of Jacobs,* 98 id. 108. The fine is out of all proportion to the offense and is excessive in fact and law. The court erred in ruling that the law was not unconstitutional on this account, and in not submitting the question to the jury to determine. *Blydenburgh* v. *Miles,* 39 Conn. 495. The jury are the judges of the law and must necessarily determine constitutional objections which render that not a law in fact,

though such in form. If the defendant is right, the constitutionality of the law in this particular depended upon a question of fact whether diseased trees on a man's land caused a substantial injury to his neighbor of such a nature that a law condemning such trees was a reasonable exercise of the police power. The court erred in its rulings on evidence. 1 Greenl., Ev., §§ 83, 92; *Morse* v. *State*, 6 Conn. 13; *Morris* v. *East Haven*, 17 id. 257; *Porter* v. *Pequonnoc*, 41 id. 254.

*Solomon Lucas*, State's Attorney, for the appellee (the State).

The rulings upon questions of evidence were correct, or at all events did the defendant no harm. *Hollister* v. *Hollister*, 35 Conn. 247; *Phillips* v. *Marblehead*, 148 Mass. 328; Taylor's Ev., § 1425; *Taylor* v. *Monroe*, 43 Conn. 43; Gen. Stats., Chap. 101; *Gilbert* v. *New Haven*, 40 Conn. 105. The trial court recognized the limited right of the jury to pass upon questions of law, and the defendant certainly cannot complain of the charge in that respect. *State* v. *Buckley*, 40 Conn. 248. The question of contagion was not open to the jury. The material inquiry was, Were the trees in fact diseased with the peach yellows? If they were, the statute declared them a nuisance and ordered their destruction. If the Act is a reasonable exercise of the police power of the State, then the want of a provision for compensation, or for a trial by jury, does not render the statute void. The legislation on this subject in other States shows the common belief in the dangerous nature of the disease known as " peach yellows." Bulletin No. 11, Dept. of Agriculture, June, 1896. Twelve States have enacted laws to eradicate this disease, and no decision in any of these States has held that this legislation does not fairly come within the police power of the State. See especially the laws of Md., Del., Mich., New York, Penn. and Virginia. The amount of the fine is not excessive. In some of the States a refusal to destroy diseased trees is declared to be a misdemeanor and punishable by imprisonment as well as by a fine.

BALDWIN, J.   Upon the trial of this cause, the defendant claimed that the statute (Public Acts of 1893, Chapter 216) upon which the prosecution was based, was unconstitutional for various reasons, and asked the court to instruct the jury as follows: " The jury are the judges of the law bearing upon the case as well as the facts, and they are entitled, and it is their duty, to consider the legal questions regarding the constitutionality of the statute in question, and if they con-. scientiously believe that the statute is unconstitutional upon any of the grounds claimed, then they should acquit the defendant."

The court refused to charge as thus requested, and instructed the jury that the statute (General Statutes, § 1630) made them the judges of the law, but not in such a sense that they were at liberty to disregard it; that when their judgment was satisfied as to what the law was, that law, as thus ascertained, was binding upon them; that in the opinion of the court the statute upon which the prosecution was brought was a constitutional and valid law; but that under the limitations already stated they were the judges of the law as well as of the facts, and it was for them to say, on all the evidence, and under the law as they should find it to be, and as they conscientiously believed it to be, whether the accused was guilty or not guilty.

There is nothing in this part of the charge of which the defendant can complain.

Constitutional law, in the form which it has taken in the United States, is an American graft on English jurisprudence. Its principles and rules are mainly the work of the present century.   They rest upon the fundamental conception of a supreme law, expressed in written form, in accordance with which all private rights must be determined, and all public authority administered.

The Constitution of Connecticut (Art. II) has divided the powers of government into three distinct departments, each confided to a separate magistracy.   To one of these departments is entrusted (Art. V) the judicial power of the State In all cases where the meaning of a written document is to be

collected from the words in which it is expressed, its construction, if called in question in the course of a judicial proceeding, is to be determined by the court. This is a proper and necessary exercise of judicial power. It belongs, therefore, to the magistracy to which the exercise of this power has been confined by the Constitution, to determine the meaning and effect of the words in which that instrument is expressed.

The defendant contends that, as by General Statutes, § 1630, it is enacted that "the court shall state its opinion to the jury upon all questions of law arising in the trial of a criminal cause, and submit to their consideration both the law and the facts, without any direction how to find their verdict," the Superior Court, in the case at bar, was bound to submit to the determination of the jury the meaning and effect of the Constitution, in its bearing upon the validity of the statute under which he was prosecuted. If this contention could be supported, it would follow that the General Assembly has power indirectly to transgress the constitutional limitations which the people have imposed upon the exercise of legislative power. It is undisputed that that body cannot enact a law which is in conflict with the Constitution. But if it can enact a law that juries, in certain cases, shall decide between the Constitution and a statute, when it is claimed by a party to the proceeding that they are in conflict, the legislative magistracy can thus invest the jury with a prerogative which it does not, itself, possess; and can take that prerogative away from the judicial magistracy, which does possess it, under the tripartite division of the powers of government, upon which our Constitution rests.

These questions first claimed the serious attention of the court and bar of the United States in connection with the prosecutions growing out of the Sedition Law of 1798. By that Act of Congress, it was provided that in any prosecution for libel the truth might be given in evidence and the jury should have " a right to determine the law and the fact, under the direction of the court, as in other cases." Notwithstanding this, the Circuit Courts uniformly held that the jury could

not pass upon the constitutionality of the statute. *United States* v. *Lyon*, Wharton's State Trials, 333, 336; *United States* v. *Callender*, ibid. 688, 713, 718. In the latter of these cases, Mr. JUSTICE CHASE observed in his charge, that by the provision above quoted "a right is given to the jury to determine what the law is in the case before them; and not to decide whether a statute of the United States produced to them, is a law or not, or whether it is void, under an opinion that it is unconstitutional, that is, contrary to the Constitution of the United States. I admit that the jury are to compare the statute with the facts proved, and then to decide whether the acts done are prohibited by the law; and whether they amount to the offense described in the indictment. This power the jury necessarily possesses, in order to enable them to decide on the guilt or innocence of the person accused. It is one thing to decide what the law is, on the facts proved, and another and a very different thing, to determine that the statute produced is no law. To decide what the law is on the facts, is an admission that the law exists. If there be no law in the case, there can be no comparison between it and the facts; and it is unnecessary to establish facts before it is ascertained that there is a law to punish the commission of them. The existence of the law is a previous inquiry, and the inquiry into facts is altogether unnecessary, if there is no law to which the facts can apply. By this right to decide what the law is in any case arising under the statute, I cannot conceive that a right is given to the petit jury to determine whether the statute (under which they claim this right) is constitutional or not. To determine the validity of the statute, the Constitution of the United States must necessarily be resorted to and considered, and its provisions inquired into. It must be determined whether the statute alleged to be void, because contrary to the Constitution, is prohibited by it expressly, or by necessary implication. Was it ever intended, by the framers of the Constitution, or by the people of America, that it should ever be submitted to the examination of a jury, to decide what restrictions are expressly or impliedly imposed by it on the national legislature? I cannot

possibly believe that Congress intended, by the statute, to grant a right to a petit jury to declare a statute void. . . . I have uniformly delivered the opinion, 'that the petit jury have a right to decide the law as well as the fact, in criminal cases;' but it never entered into my mind that they, therefore, had a right to determine the constitutionality of any statute of the United States."

*Callender's Case* was tried in 1800, and the grounds upon which the charge was based, so far as concerns the point now under consideration, have since been repeatedly approved by American courts of last resort. *Commonwealth* v. *Anthes*, 5 Gray, 185, 191, 192; *Pierce* v. *State*, 13 N. H. 536, 553, 561; *Franklin* v. *State*, 12 Md. 236, 245, 246; *Sparf* v. *United States*, 156 U. S. 51, 71.

General Statutes, § 1630, which first appears in the Revision of 1821, was not intended to narrow the functions of the court, but rather to enlarge them. *State* v. *Fetterer*, 65 Conn. 287, 291. Trial by jury in criminal cases had, for more than a century before the adoption of our Constitution, become something very different in Connecticut from what it was under the common law. The judges, after the first generation of colonists, among whom were some who had been trained for the English bar, had passed away, had seldom received any special legal education. They did not assume to express any opinion of their own to the jury on points of law; contenting themselves with simply recapitulating in the charge the points made by counsel. 2 Swift's System, 258, 401. If a verdict of guilty were returned in the County Court, the prisoner had, by a statute passed in 1705, an absolute right of "review," that is to a new trial. Stats., Comp. of 1715, p. 131. As soon as the judicial establishment of the State was reorganized, in 1806, by placing only trained lawyers upon the bench, the judges began the restoration of trial by jury to something like its form at comman law. General Rules of Practice, 3 Day, 28. The General Assembly took action in the same direction in 1812 (Session Laws of 1812, Chap. XV, p. 106), and in 1818 the framers of the Constitution completed the work (Art. I, § 21).

Trial by jury had lost, under our colonial government, its native strength and dignity. Legislation and judicial practice had done something towards their restoration. The Constitution, in providing that the right of trial by jury should remain inviolate, was designed to perpetuate its essential characteristics, as they existed at common law; preserving its substance, while leaving its form to be regulated from time to time as the legislative power might deem the public interests to require. *Guile* v. *Brown*, 38 Conn. 237, 243; *State* v. *Worden*, 46 id. 349, 365.

The effect of the statutory provisions in the Revision of 1821, by which it was sought to give proper effect to the Declaration of Rights in this particular, was probably not fully apprehended by those who penned them. CHIEF JUS-TICE SWIFT, who was one of the revisers, states in his Digest, with reference to General Statutes, § 1630, that it precludes the court from expressing any opinion on the facts, or giving any direction to the jury with regard to them, and so that the judge is made a mere cipher, as it respects the facts in criminal cases, and the jury deprived of that benefit from his ability and experience which in other States, where the common law is recognized, is secured by his explanation and illustration of the testimony, and the statement of his opinion as to its weight and sufficiency. 2 Swift's Digest, 412. The judicial construction of the statute, however, has always been otherwise; and it is settled by a long course of decisions that the judge can, and wherever it seems necessary, should, in the charge give his own opinion of the nature, bearing, and force of the evidence adduced. *State* v. *Rome*, 64 Conn. 329, 336. The meaning of a statute must always depend on the words used, and the intention as thus expressed. *Lee Bros. Furniture Co.* v. *Cram*, 63 Conn. 433, 438; *Dartmouth College* v. *Woodward*, 4 Wheat. 518. Courts cannot, with safety, proceed under any other rule, even if satisfied that this expressed intention was not that which the legislature designed to express, or that understood by contemporary expositors.

It has been assumed in some of the decisions of this court

that the statute now under consideration (General Statutes, § 1630) may subject to the determination of the jury in criminal cases questions of statutory or common law to a greater extent than would otherwise have been allowed. *State* v. *Buckley,* 40 Conn. 246, 248; *State* v. *Thomas,* 47 id. 546, 551. If this be so, it would not follow that it has subjected to their determination any question of constitutional law. It is true that the requests for instructions, which came under review in the cases above cited, related to questions of that nature; but the distinction between constitutional law and other law was not alluded to in argument or considered by the court. We have now found it necessary to consider it fully, and are satisfied that to hold the statute to mean that it is in the rightful province of the jury to determine the true construction of the Constitution, in criminal cases, would be to attribute to the General Assembly an intent to trench upon the judicial power, and give to verdicts a superior force to that of the words of the Constitution itself.

At common law, no jury ever exercised such a function, for there was no written constitution under which the government was created and by which its limitations were established. The constitutional guaranty that the right of trial by jury shall remain inviolate, lends therefore no aid to the defendant's position.

On the other hand, the section of the Declaration of Rights (Const. Art. I, § 7) which declares that " in all prosecutions or indictments for libels, the truth may be given in evidence, and the jury shall have the right to determine the law and the facts, under the direction of the court," implies that, but for such a declaration, it would be, to say the least, doubtful, whether in prosecutions for that offense, the jury could, under the principles of the common law, determine the law of the case by their verdict. On that subject there had been a sharp contest between the English bar and the English bench. In 1792, only twenty-six years before the adoption of our Constitution, it had been affirmed by the twelve judges of England, in response to questions put to them by the House of Lords, that the general criminal law was also the

law of libel, and that in prosecutions for that offense it was the duty of the judge to declare to the jury what the law was, and their duty, should they find a general verdict, to compound it of the fact as it appeared in evidence before them, and of the law as it was declared to them by him. Annual Register for 1792, Chron. 62, 68, 69, 75. The same rule was laid down in 1803 by CHIEF JUSTICE LEWIS, in an important prosecution of this nature in New York. *People* v. *Croswell,* 3 Johns. Cases, 337, 341. The earliest State constitution in which indictments for libel are specifically mentioned, is that of Pennsylvania, adopted in 1790, two years before the passage of Fox's Libel Bill in Parliament, in which it was declared that in such proceedings "the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases." 2 Poore's Charters & Const., 1554. Constitutional provisions similarly phrased were adopted by Kentucky in 1792 and 1799, by Tennessee in 1796, and by Illinois in August, 1818. 1 Poore, 278, 447, 655, 666; 2 Poore, 1674. The same terms were also introduced, as has been stated, in the Sedition Act of 1798. In 1817, Mississippi put into her Declaration of Rights, from which that in our Constitution, adopted in September of the following year, was largely copied, a section precisely identical with that now under consideration. 2 Poore, 1055. It will be remarked that the words "as in other cases" were thus dropped by Mississippi, and, following her lead, by the framers of our Constitution. This would seem to indicate that they intended to secure to juries larger power over questions of law in prosecutions of libel, than in other criminal trials ; and our statute (§ 1630) is in entire harmony with this view, since, in lieu of declaring that the jury shall have the right to "determine" the law under the direction of the court in ordinary prosecutions, it only provides that the court shall state its opinion to them on all questions of law, and then submit the law to their "consideration," without any direction how to find their verdict.

The distinguishing feature of trial by jury in criminal cases as compared with trial by jury in civil cases, has always

been the right of the jury to return a general verdict, and such a verdict as they might deem proper, on the law and the evidence, without dictation from the court. The English judges, from the earliest times, were accustomed to instruct the jury as to the law, with the same freedom in criminal as in civil proceedings; but after the decision in *Bushuell's Case*, in 1670, they never assumed the right to direct a verdict of guilty.

It was the duty of the Superior Court to instruct the jury as to the constitutionality or unconstitutionality of the statute under which the defendant was prosecuted; but it would have had no right to direct a verdict either of conviction or acquittal. Their duty to accept the construction of the Constitution which the court might adopt, was absolute. They were bound to this, as well by their official oath as jurors well and truly to try and true deliverance make between the State of Connecticut and the prisoner at the bar, according to law and the evidence before them, as by the oath which each had taken as a freeman to be true and faithful to the State of Connecticut and the Constitution and government thereof. General Statutes, § 3264. But their right to return such a verdict as they thought proper was absolute, also. Law and fact are inseparably blended in every general verdict. By a verdict of not guilty, they might in effect have disregarded the instruction of the court, but only by disregarding the Constitution and disobeying the government which they had sworn to support.

The request for instructions, which has been under consideration, was, therefore, properly refused. It is unnecessary to decide whether the instructions which were given in response to it, and substantially followed the charge sustained in *State* v. *Buckley*, 40 Conn. 246, were in all points correct. They gave the defendant no cause of complaint.

The Superior Court was also right in refusing to instruct the jury, as requested, that if they should "find that the 'Yellows' is not a contagious disease and the existence of the disease in one tree does not cause it to spread from that tree to other trees, and thus endanger other trees, the prop-

erty of others, and that a tree so diseased is not a public
nuisance, then this statute is an improper and unwarrantable
invasion of the rights and property of citizens, the right to
care for his property and plant and cultivate his trees as he
desires without interference, and is unconstitutional and
void."

Whether the "yellows" was such a disease as to justify
the General Assembly in enacting the statute under which
the prosecution was brought, depended on the existence and
nature of the disease, and also on the apprehension of dan-
ger from it commonly entertained by the public at large.
That such a disease existed, and was one of a serious char-
acter, ordinarily resulting in the premature death of the tree
affected, is a matter of common knowledge, of which the
court had a right to take judicial notice. Century Dict.,
Peach-yellows, and Yellows; Webster's Internat. Dict., Yel-
lows. Such a disease it was proper for the General Assem-
bly, in the exercise of its police power, to endeavor to suppress,
even by the destruction of the trees attacked by it, if there
was a reasonable apprehension of substantial danger from
allowing them to live, to those who might eat their fruit, or
to other peach orchards.

Unless the courts can see that there could by no possibility
be such danger, the propriety of such legislation as that now
in question, is to be determined solely by the discretion of
the legislative department. The description of this disease
given in standard works and government publications, and
the legislation in regard to it to be found in the statute books
of Delaware, Maryland, Michigan, New York, Pennsylvania,
Virginia, and the Province of Ontario, are amply sufficient
to establish as a matter of judicial notice the possibility, if
not the probability, that it is a contagious disease. *Grimes*
v. *Eddy*, 126 Mo. 168, 28 Southwestern Rep. 756. The de-
struction of a tree affected by a disease of that character,
without compensation to the owner and against his will, is
as fully within the police power of a State as the destruction
of a house threatened by a spreading conflagration, or the
clothes of a person who has fallen a victim to small-pox.

Such property is not taken for public use. It is destroyed because, in the judgment of those to whom the law has confided the power of decision, it is of no use and is a source of public danger.

Judicial notice takes the place of proof, and is of equal force. As a means of establishing facts it is therefore superior to evidence. In its appropriate field it displaces evidence, since, as it stands for proof, it fulfills the object which evidence is designed to fulfill, and makes evidence unnecessary. *Brown* v. *Piper*, 91 U. S. 37, 43: *Commonwealth* v. *Marzynski*, 149 Mass. 68, 21 Northeastern Rep. 228. "The true conception of what is judicially known is that of something which is not, or rather need not, unless the tribunal wishes it, be the subject of either evidence or argument,— something which is already in the court's possession, or at any rate is so accessible that there is no occasion to use any means to make the court aware of it." Thayer's Cases on Evidence, 20. If, in regard to any subject of judicial notice, the court should permit documents to be referred to or testimony introduced, it would not be, in any proper sense, the admission of evidence, but simply a resort to a convenient means of refreshing the memory, or making the trier aware of that of which everybody ought to be aware. *State* v. *Morris*, 47 Conn. 179, 180.

The defendant, therefore, had no right to have the jury pass upon the danger of contagion from trees affected by the yellows, as a means of determining the constitutionality of the statute, by such verdict as they might render under the instructions of the court. It was for the court to take notice that it was a disease which might be contagious. *Norwalk Gaslight Co.* v. *Norwalk*, 63 Conn. 495, 525, 527. This being established, the validity of the statute became a matter of pure law. Police legislation for the extirpation of a disease of such a nature, which the legislative department deems dangerous to the public welfare, cannot be pronounced invalid by the judicial department by reason of any difference of opinion, should one exist, between these two agencies of government, as to the probability of such danger. If the

law may be an appropriate means of protecting the public
health and the agricultural interests of the State, it is for the
legislature alone to determine as to its adoption.    It may
have been the opinion of the General Assembly that peach
growers in general would abandon their business, from dread
of contagion from orchards infected by the yellows.    In
such a case, whether their apprehensions were well-founded
or ill-founded would be immaterial, unless it also appeared
that there could be no reasonable grounds for them.    A wide
spread apprehension throughout the community justifies it-
self, and is a sufficient basis for legislative action towards
the removal of the cause, real or supposed, of the danger
apprehended, when this cause is a deadly disease of a food-
producing tree.    *Bissell* v. *Davison*, 65 Conn. 183, 191.    The
destruction of the infected trees by order of a public official,
after due inspection, is a remedy which, however severe, is
one appropriate to the end in view, and may properly be
enforced without any preliminary judicial inquiry, as well as
without any compensation to the owner for resulting loss.
*State* v. *Wordin*, 56 Conn. 216, 226 ; *Powell* v. *Pennsylvania*,
127 U. S. 678, 685.

The Superior Court also properly refused to instruct the
jury, as requested by the defendant, that " if the term ' Yel-
lows ' in the statute does not define with clearness and cer-
tainty a well and commonly known disease of peach trees,
capable of being clearly and readily recognized, identified
and shown to exist, but the term is so vague and uncertain
that it furnishes no clear and fixed standard so as to deter-
mine what said disease is and when it exists, then the stat-
ute is void for doubt and uncertainty in defining the disease
and the crime of failing to destroy such diseased trees."

As has already been stated, the court had a right to take
judicial notice that the term " Yellows " was one, the mean-
ing of which was clearly defined by common usage.    This
being so, whether the statute was void for uncertainty, or
not, depended simply on the construction of a written docu-
ment, and was properly and only a question for the court.

*Jordan, Marsh & Co.* v. *Patterson,* 67 Conn. 473, 479; *People* v. *Smith,* 106 Mich. 431, 66 Northwestern Rep. 382, 384.

The requests for instructions that "the statute is unconstitutional and void because it deprives a person of his rights and property without notice and hearing and without due course of law, without compensation, and violates the right of trial by jury;" and that "if the minimum fine provided by the statute is unreasonably great and out of proportion to the act for which it is imposed, considering the nature and circumstances of the act, and such fine would be oppressive and unjust, then it is an excessive fine, and the statute imposing it violates the Constitution of this State and is invalid and unconstitutional, and the defendant is entitled to an acquittal even though guilty of the act charged," were also properly refused.

The notice from the deputy commissioner of peach yellows, and the proceedings conducted by him upon the defendant's premises, were sufficient to satisfy every requirement of the constitutions of Connecticut and of the United States, as well as the principles of natural justice, if the trees in question were in fact diseased with the yellows. Summary proceedings for the abatement of whatever is dangerous to the public health or safety are often necessary, and have always been permitted when authorized by appropriate legislation. *Raymond* v. *Fish,* 51 Conn. 80, 97. If, indeed, the trees which the defendant was ordered to destroy did not in fact have the yellows, he was justified in disobeying the order. As to this he was entitled to demand a trial by jury; and he has had one, in which the question was properly submitted to their determination. *Miller* v. *Horton,* 152 Mass. 540, 26 Northeastern Rep. 100; *Health Department* v. *Trinity Church,* 145 N. Y. 32, 39 Northeastern Rep. 833.

Whether the fine prescribed in the statute was excessive, presented a question of law, and was properly disposed of, as such. It is not so clearly disproportioned to the offense as to come necessarily within the constitutional prohibition, and it is only in case of a plain conflict between the supreme law and an enactment of the legislature, that the courts can

interfere for the protection of the citizen. *Blydenburgh* v. *Miles*, 39 Conn. 484, 497.

The Superior Court instructed the jury that as the legislature had by this statute declared trees diseased by the yellows to be a public nuisance, that decision was final, and it was not for them to inquire whether they were, in fact, such or not. This position is not without authority for its support. *Train* v. *Boston Disinfecting Co.*, 144 Mass. 523, 11 Northeastern Rep. 929. But whether sound or unsound (as to which we express no opinion), the charge in this particular did the defendant no injury, for it was delivered only with reference to the constitutionality of the statute, and as to that the jury had been already definitely and correctly instructed that it was a constitutional and valid law. Its validity did not depend on the question of nuisance, or no nuisance. It was enough that the court could see that reasonable apprehensions of danger from the disease were commonly entertained in the public mind, and that it was not impossible that it was dangerous, because contagious. The court below therefore reached the right result, even if it were by the wrong road.

The defendant requested instructions to the effect that before the commissioner of peach yellows or his deputy " could legally order trees destroyed, regulations in relation to so ordering trees destroyed must have been adopted or approved by the State Board of Agriculture, and the State having failed to prove any such regulations, the defendant should be acquitted." They were properly refused, because the State had offered evidence tending to show that such regulations had been previously adopted.

This evidence was a copy from the records of the board, duly certified by its secretary, under its seal, purporting to set forth the doings of the board at a meeting held several months before the date of the order served upon the defendant. He sought to meet this document by oral testimony from the secretary that the statement in the minutes of the meeting that certain regulations were adopted, had been interlined pending this prosecution, and was no part of the

original record. This testimony was properly rejected by the court. It was offered to impeach the record of a public board, and such a record cannot thus be collaterally attacked. *Gilbert* v. *New Haven*, 40 Conn. 102.

It is also assigned for error that James P. Brown, a witness for the State, by whom the order in question was made, when asked what position he held at the time it was issued, was allowed to state that he was then acting as a deputy commissioner of peach yellows. If by this he meant to be understood as saying that he acted as such a deputy commissioner in issuing the order, or in inspecting and condemning the trees, the testimony was properly objected to. If on the other hand, his meaning was that at the time in question he was acting in other matters generally as such a deputy commissioner, the evidence was admissible. But in either case, its reception would be no ground of error, since the copy of record subsequently introduced showed his due appointment to the office in question.

The same witness was allowed to testify that after an examination of the defendant's orchard, he condemned sixty-four trees which were diseased with the peach yellows; the defendant excepting because no facts were stated showing the condition of the trees or symptoms of disease. There was no error in this ruling.

It is a familiar rule of law that every man acting officially shall be presumed to have done his duty, until the contrary appears. *Booth* v. *Booth*, 7 Conn. 350, 367. This rule rests on the assumption that he will not undertake the execution of his office, unless he is reasonably competent to discharge the duties which belong to it. A man cannot be expected to do his duty, who does not know what his duty is, and how to perform it. A commissioner or deputy commissioner of peach yellows is charged by statute with the duty of visiting any peach orchard where it is suspected that there are trees diseased with the yellows; making a personal investigation to determine as to the presence of the disease; and, should he find that any trees are infected by it, ordering their destruction. The witness had for more than a

month before his inspection of the defendant's trees been a deputy commissioner of peach yellows under this law. This was, to say the least, a circumstance which the court had a right to consider, in determining whether to receive him on the footing of an expert, even if he were not to be regarded as presumably *peritus virtute officii.* *The Sussex Peerage,* 11 Clark & Fin. 85, 125, 134; *Dickenson* v. *Fitchburg,* 13 Gray, 546, 557; *Grayson* v. *Lynch,* 163 U. S. 468, 480. The record does not disclose whether any further evidence as to his practical acquaintance with the symptoms of the disease was, or was not, introduced. The decision of a trial judge in admitting a witness to testify as an expert will not be reviewed, unless it is clearly shown to have been based on incompetent or insufficient evidence.

There is no error in the judgment appealed from.

In this opinion TORRANCE and FENN, Js., concurred.

HAMERSLEY, J., (concurring in the judgment). The defendant relied upon satisfying the jury that even if every fact alleged in the complaint were found true, nevertheless the law applicable to those facts demanded his acquittal. The propositions of law upon which he mainly relied, are : (1) The provisions of the Constitution relative to trial by jury, compensation for property taken for public use, due process of law and excessive fines, render void the Act under which the prosecution is brought. (2) By the true construction of the Act itself the commissioner is authorized to condemn and to destroy peach trees, of his own motion, without any process of law and without any liability for damage ; and by the true construction of the Act this admittedly lawless proceeding is made the basis of the prosecution. (3) The language of the Act used in creating the offense is so vague and indefinite that it conveys no meaning, and therefore no crime is defined. He asked the court to instruct the jury that they " are the judges of the law bearing upon the case, as well as the facts; " and that they not only have the power, but that it is their duty, to consider the

legal questions, even those regarding the constitutionality of the Act, and to decide these questions in accordance with their conscientious belief ; and especially asked the court to submit to the jury to decide on their conscientious belief the legal question whether the language of the Act was sufficiently clear and certain to define any crime.

No other construction can in common fairness be given to the defendant's requests. He was trying his case in reliance on his power to influence the decision of the jury as judges of the law; and demanded his right to have the jury told that if they decided on their own belief—although the court might express a contrary opinion—that any part of the law bearing on the case was as claimed by the defendant, it was their duty to apply that law to the facts. The court did not comply with these requests. If the defendant had the right to have the jury so instructed, there is error in the judgment.

To hold only that the jury cannot decide a question of constitutional law, does not meet the issue. It may be true that if the jury are judges of the law as claimed by the defendant, yet they are not judges of the limitations placed on the powers of the legislature by the Constitution ; but this can be so only because the constitutionality of an Act, either as a question of law or fact, is a matter wholly outside the province of a jury. The validity of an Act under a written constitution is a judicial question, but in its very nature is one that must be determined by the court, and is one which, as fact or law, has never been within the issue submitted to a jury since trial by jury was first known. The limitation of governmental power by a law supreme over every department of government, was unknown until the close of the last century. It has developed a branch of jurisprudence absolutely new, and incapable of administration except by the court. Questions arising under this law are utterly foreign to " trial by jury ; " it is impossible that the term "right of trial by jury " could ever have included such questions, and their submission to a jury involves a vital change in jury trial and would be subversive of the founda-

tion on which a strictly constitutional government must rest. But if the jury are judges of the law as to every question within the issue submitted to them, they are judges of the law bearing upon the true meaning of the language of a statute, and the extent and meaning of "judicial notice;" these questions are within the issue tried to a jury, assuming them to be judges of the law. In the trial below the defendant was denied the right he claimed, to have the jury told that as to the questions of law within the issue referred to them by the pleadings, they are the judges to decide in accordance with their opinion what the law is. The denial as to the questions within the issue cannot be justified because some of the questions as to which the right was claimed in the defendant's requests were without the issue; especially when neither counsel in framing, nor court in answering the requests, contemplated any such distinction. It is impossible, therefore, to hold that there is no error in the judgment, without passing upon the right claimed by the defendant, and denied by the court in language that was erroneous only because it partially conceded the defendant's claim.

I think the court did not err in refusing to charge in accordance with the defendant's request, because it is not true that the jury in the trial of a criminal prosecution are judges of the law in the sense that it is their duty to review the decisions of the court upon questions of law arising in the case, and to decide the law in accordance with their own judgment.

Trial by jury is a process peculiar to the English common law, slowly developed from diverse experiences, and finally adopted as the best attainable in certain kinds of litigation, for ascertaining facts from evidence and applying to them settled principles of law; it seeks to unite the benefits to be derived from the common sense of average citizens in getting at substantial truth from conflicting testimony, and from the learning and skill of the judge in accurately determining the appropriate law. Its main, essential feature, which marks its practical value, is that throughout the whole judicial process from the institution of a case to the final judgment, the judge

determines the law and the jury determines the facts referred to them by the pleadings. These powers of judge and jury are distinct. As LORD HARDWICKE said in 1734: "If ever they come to be confounded, it will prove the confusion and destruction of the law of England." Lee's Cases, Temp. Hardw. *23, *28. Whenever a question of law is presented, whether it concern the sufficiency of the complaint, the impanelling of the jury, the admission of testimony, or the conclusion of law from the facts admitted or proved,—the court alone answers; whenever the pleadings terminate in an issue of pure fact, the jury alone answers. It happens, however, in some cases, and usually in criminal cases, that under existing rules of procedure the issue of fact presented by the pleadings and referred to the jury, is one where the law and the facts are complicate, *i. e.*, the pure question of fact cannot be fairly determined except in relation to the law, and the pure question of law cannot be determined until the facts are found. In such case the jury may, at their option, pass separately upon the facts by the return of a special verdict; or, applying the law as stated by the court, to the facts as found by them, determine the whole question presented by the pleadings by means of a general verdict; and the respective powers of court and jury are preserved by the judge stating his determination of the law hypothetically— if the facts be so and so, this is the law—leaving the jury to find the facts in view of the law so determined by the judge. Here the court and jury exercise their respective powers, jointly, as it were; and the general verdict should express the law as determined by the judge and the facts as found by the jury. It is evident that, as a general verdict involves an application of the law as declared by the court to the facts as found from the evidence, the jury must consider the law in connection with the evidence in reaching their ultimate conclusion, and in this limited sense they may, with doubtful accuracy, be called judges of the law; but as the law determined by the court is the law they must consider, it is clear that in no sense which involves any independent determination of what the law of the State is, are they the judges of the law. It is within the physical power of the

jury to disregard the law as well as the evidence; and it was to induce the abuse of this power that the phrase "judges of the law" was first perverted from the limited sense in which only it can be used, and became a favorite euphuism in appeals to juries for a violation of duty. These essential features of jury trial, *i. e.*, the power of the court to direct the jury in matters of law, and the power of the jury to apply the law received from the court to the facts found from the evidence, and so determine by a general verdict issues of fact presented by the pleadings where the law and the fact may be complicate, are involved in the right of trial by jury, which our Constitution declares shall remain inviolate.

Section 1630 of the General Statutes, in connection with § 1101, is in accordance with and does not alter such trial by jury. The cases of *State* v. *Buckley*, 40 Conn. 246, and *State* v. *Thomas*, 47 id. 546, in so far as they assume that the statute has made the jury judges of the law in any other than the limited sense above stated, do not rest upon sound reason and are contrary to what must now be considered well settled authority. *State* v. *Carrier*, 5 Day, 131; *State* v. *Smith*, ibid. 175; *State* v. *Ellis*, 3 Conn. 185; *State* v. *Tuller*, 34 id. 280, 287; *State* v. *Fetterer*, 65 id. 287, 293; *Rex* v. *Dean of St. Asaph*, 3 T. R. 428, 429; *U. S.* v. *Battiste*, 2 Sumner, 240, 243; *Pierce* v. *State*, 13 N. H. 536, 554; *Com.* v. *Porter*, 10 Metc. (Mass.) 263, 285; *Com.* v. *Anthes*, 5 Gray, 185; *Com.* v. *Rock*, 10 id., 4; *U. S.* v. *Morris*, 1 Curtis, 23, 63; *State* v. *Smith*, 6 R. I. 33, 34; *Duffy* v. *The People*, 26 N. Y. 588, 591; *Hamilton* v. *The People*, 29 Mich. 173; *State* v. *Burpee*, 65 Vt. 1, 34; *Sparf* v. *U. S.*, 156 U. S. 51.

I think there is no error in the judgment of the Superior Court which calls for a new trial on any of the grounds stated in the appeal.

ANDREWS, C. J. I dissent entirely from the views stated by JUDGE HAMERSLEY. I have serious doubts as to the correctness of the opinion written by JUDGE BALDWIN, but I have so far yielded to the arguments of my brethren as not to dissent from the result reached by them.